367 So.2d 1284 (1979)
Robert PEREZ, Jr., Plaintiff-Appellant,
v.
CONTINENTAL CASUALTY COMPANY et al., Defendants-Appellees.
No. 6846.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1979.
Writ Refused March 23, 1979.
*1285 Domengeaux & Wright, William P. Rutledge, Lafayette, for plaintiff-appellant.
Voorhies & Labbe, Richard D. Chappuis, Lafayette, for defendants-appellees.
Davidson, Meaux, Sonnier & Roy, L. Lane Roy, Lafayette, amicus curiae.
Before WATSON, CUTRER and DOUCET, JJ.
CUTRER, Judge.
This is a suit for damages by Robert Perez, Jr., as a result of injuries received while performing his duties as an employee of Morton Chemical Company. The defendants are certain executive officers and/or employees of Morton and their insurer, Continental Casualty Company. The defendants filed an exception of no right or cause of action on the ground that LSA-R.S. 23:1032, as amended by Act 147 of 1976, granted immunity to defendants as executive officers or co-employees from being sued in tort by a fellow employee.
The trial court sustained the exception filed by defendants, dismissing plaintiff's suit. Plaintiff appeals.
The single issue presented on appeal is whether LSA-R.S. 23:1032, as amended by Act 147 of 1976,[1] is constitutional.
Before we get into a discussion of the issue, we feel that a brief background discussion of the statute would be helpful. The initial Workmen's Compensation Act came into being by the adoption of Act 20 of 1914. The fundamental characteristics of the Act have remained intact to this date. The changes that have been made have usually affected the amount of compensation allowed, changes of disability provisions, *1286 or other amendments which were necessitated by experience.[2]
The purpose of the Act is set out in the case of Atchison v. May, 201 La. 1003, 10 So.2d 785 (1942), where our Supreme Court stated as follows:
". . . The act, which is social legislation, was passed for the joint benefit of labor and management in order to insure that employees who became disabled as a result of their labors in hazardous industries would have, during the period of their disability, a weekly income for the upkeep of themselves and their families. * * * In order that this end might be accomplished, the Legislature provided for sacrifices to be made by both the employer and the employee. The employee was required to waive the right granted him under the general law, Article 2315 of the Civil Code, in consideration of receiving a fixed percentage of his wages during the period of disability. The employer, on the other hand, was deprived of the defenses afforded to him by the general law and he was assured that, in case any of his employees were injured, they would be entitled to no more than the amount stipulated in the statute as compensation during the period of disability. * * *"
One of the fundamental features of the Act is that the employee's cause of action against the employer is exclusively for workmen's compensation (LSA-R.S. 23:1032). Even though the cause of action for compensation is exclusive between the employee and employer, the Act, however, authorizes the employee to proceed against third parties for damages even though he has been awarded compensation by his employer for the same injury (LSA-R.S. 23:1101).
The term "third parties" as used in this section was interpreted to include officers, directors, principals, and employees of the employer. Until 1959 the cases involving the tort liability of a fellow employee were concerned with claims against workers on approximately the same level of employment as the victim. The problem of the liability of persons in the upper echelons of management was raised in 1958 in the case of Adams v. Fidelity and Casualty Company of N. Y., 107 So.2d 496 (La.App. 1st Cir. 1958). Malone, Louisiana Workmen's Compensation Law and Practice, § 366, p. 193, 1964 Supp. Following Adams, the line of cases developed commonly referred to as "executive officer" suits. Canter v. Koehring Co., 283 So.2d 716 (1973).
With the advent and progression of the "executive officer" suits, the employer was faced with serious problems of practical importance. As pointed out by Malone, Louisiana Workmen's Compensation Law and Practice, § 366, p. 194 of 1964 Supp.:
". . . If officers in the upper echelons of management find themselves exposed to the often disastrous prospect of tort liability for the almost unlimited number of employee accidents that could be in some way attributed to their neglect, they will be impelled in practice to exact liability insurance from the corporate employer. The result may be a denial to the employer of much of the practical advantage of the exclusive remedy provision. This, however, is a matter for legislative consideration."
Thus, the legislature adopted Act 147 of 1976 (amending LSA-R.S. 23:1032) which extended tort immunity not only to employers but also to any principal, officer, director, stockholder, partner or employee of such employer.
We now approach the question of constitutionality of the amendment.
Shortly after the adoption of the Louisiana Workmen's Compensation Act in 1914, it was challenged as being unconstitutional on the ground that it was a denial of due process of law and was also a deprivation of the equal protection of the laws. Boyer v. Crescent Paper Box Factory, 143 La. 368, 78 So. 596 (1917). The court held the act constitutional, citing the U.S. Supreme Court *1287 case of New York Central R. R. Co. v. White, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917). The court in the latter case found a New York workmen's compensation act constitutional on the ground that such legislation was within the police power of the State.
Subsequent Louisiana cases likewise reflect that the statute has withstood attacks of constitutionality. Day v. Louisiana Central Lumber Co., 144 La. 120, 81 So. 328 (1919); Colorado v. Johnson Iron Works, 146 La. 68, 83 So. 381 (1919); and Williams v. Blodgett Construction Co., 146 La. 841, 84 So. 115 (1920). In these cases the plaintiffs generally attacked the validity of the Act on the ground that the Act unconstitutionally deprived the plaintiffs of the right to proceed in tort against the employer.
Our Supreme Court in a more recent case, Ancor v. Belden Concrete Products, Inc., 260 La. 372, 256 So.2d 122 (1971), in discussing the validity of the Louisiana Workmen's Compensation Law, held as follows:
"The Louisiana Workmen's Compensation Act was adopted in 1914. [footnote omitted] It rests upon the sound economic principle that the cost of injuries and deaths incurred in the manufacture or distribution of a product should be diffused in the channels of commerce as part of the price to the consumer.

* * * * * *
"It provides a framework for compensation for disability or death from work-connected injuries without regard to fault. The benefits in the Act do not include the full range of elements in tort damages. The failure of the workmen's compensation statute to afford recovery for all losses recoverable in tort does not impair its validity. See New York Central Ry. Co. v. White, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667, L.R.A.1917D, 1 (1917); Bergeron v. New Amsterdam Casualty Company, 243 La. 108, 141 So.2d 832 (1962); Colorado v. Johnson Iron Works Ltd., 146 La. 68, 83 So. 381 (1919); Day v. Louisiana Central Lbr. Co., 144 La. 820, 81 So. 328 (1919).

* * * * * *
"As this Court stated in Haynes v. Loffland Bros. Co., 215 La. 280, 40 So.2d 243 (1949), the amount of compensation, to whom it is due, and the conditions under which it may be demanded address themselves to the law-making body of the state."
The plaintiff, while not attacking the constitutionality of the employer's immunity, contends that the extension of such immunity to officers, directors, stockholders, and employees of the employer is unconstitutional as being a denial of the equal protection of the law as provided by Article 1, Section 3 of the Louisiana Constitution of 1974, which provides:
"No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime."
In the recent case of Burmaster v. Gravity Drainage District No. 2 of the Parish of St. Charles, 366 So.2d 1381 (1978), the Supreme Court defined the scope and effect of this constitutional provision:
". . . The equal protection guarantee of our constitution, however, was intended only as a restatement of the federal equal protection clause. State v. Barton, 315 So.2d 289 (La.1975).
"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated. Succession of Robins, 349 So.2d 276 (La.1977). Where, as here, there is no involvement of a `suspect classification' or `fundamental right,'3 traditional equal
3" Fundamental rights include such rights as free speech, voting, interstate travel and other fundamental liberties. Suspect classifications are those involving such unalterable traits as race, alienage and religion. See Everett v. Goldman, infra."
protection analysis sustains a classification if it is not arbitrary and bears a *1288 rational relationship to a legitimate state interest. Everett v. Goldman, 359 So.2d 1256 (La.1978); Succession of Robins, supra; State v. Everfield, 342 So.2d 648 (La.1977). The legislature has a wide scope of discretion in enacting laws which affect some groups of citizens differently from others. The constitutional safeguard of equal protection is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)."
As previously discussed, the growing number of "executive officer" suits presented practical problems to the employer. By extending the employer's immunity from tort suit to the officers, directors, stockholders, partners or employees of such employer, the legislature granted immunity, not only to an employer, but to those who form the basic indispensable ingredients of the employer's business. Such extension of immunity tends to maintain the integrity and original purpose of the act. Under these circumstances this legislative classification is found to be within reason and it achieves the objective of the state. It is not a denial of equal protection of the law.
Plaintiff's further contention, that the amendments are a violation of the due process clause,[3] is without merit. The accident herein occurred after the effective date of the amendment. At the time the accidental injury occurred, no cause of action existed against defendants; thus, it cannot be said that plaintiff was deprived of a cause of action by the statute.
In Burmaster, supra, the Supreme Court held as follows:
"Where an injury has occurred for which the injured party has a cause of action, such cause of action is a vested property right which is protected by the guarantee of due process. See Gibbes v. Zimmerman, 290 U.S. 326, 332, 54 S.Ct. 140, 78 L.Ed. 342 (1933); Pritchard v. Norton, 106 U.S. 124, 132 (1882). However, where the injury has not yet occurred and the cause of action has not yet vested, the guarantee of due process does not forbid the creation of new causes of action or the abolition of old ones to attain permissible legislative objectives. See Silver v. Silver, 280 U.S. 117, 122, 50 S.Ct. 57, 74 L.Ed. 221 (1929). Our jurisprudence has recognized the validity of legislative regulation of causes of action, including replacement and even abolition, that one person may have against another for personal injuries. See Ancor v. Belden Concrete Products, Inc., 260 La. 372, 256 So.2d 122 (1971); Colorado v. Johnson Iron Works, 146 La. 68, 83 So. 381 (1919); see also Heirs of Fruge v. Blood Services, 506 F.2d 841 (5th Cir. 1975)."
The amendment does not violate the due process clause of the Constitution.
The plaintiff cites cases decided in the States of Arizona and Alabama to support his position. In the case of Kilpatrick v. Superior Court, 105 Ariz. 413, 466 P.2d 18 (1970), the court ruled that an act granting "executive officer" immunity was unconstitutional under the Arizona Constitution. The court cited two constitutional provisions which prohibited any limitation on a tort action. The Louisiana Constitution of 1974 contains no such limitations or prohibitions as those found in the Constitution of Arizona. The second case relied upon by plaintiff is Grantham v. Denke, 359 So.2d 785 (Ala.1978). The Alabama court, citing and following Kilpatrick, held that the Constitution of Alabama preserved the injured employee's common law cause of action against executive officers or co-employees.
Grantham has no application to the case at hand. That case was decided upon common law principles of tort. Such principles of common law, as a basis for an action in damages, cannot be applied to the law of *1289 tort in Louisiana. Our tort law emanates from Civil Code Article 2315, which is statutory, and "the regulation of what recourse one person may have against another for personal injury is a matter entirely within legislative discretion." Colorado v. Johnson Iron Works, supra.
In conclusion we hold that there is no constitutional impediment to the validity of the amendment in question.
For these reasons, the judgment of the lower court is affirmed. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.
NOTES
[1] LSA-R.S. 23:1032, as amended, reads in part as follows:

"The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal, or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease." [Emphasis added]
By so amending LSA-R.S. 23:1032, it was also necessary to amend LSA-R.S. 23:1101, which now reads in part as follows:
"When an injury or compensable sickness or disease for which compensation is payable under this Chapter has occurred under circumstances creating in some person (in this Section referred to as third person) other than those persons against whom said employee's rights and remedies are limited in Section 1032 of this Chapter, a legal liability to pay damages in respect thereto, the aforesaid employee or his dependents may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the said employee or his dependents, relations, or personal representatives, against such third person, nor be regarded as establishing a measure of damages for the claim; and such employee or his dependents, relations or personal representatives may obtain damages from or proceed at law against such third person to recover damages for the injury or compensable sickness or disease."
[2] For a discussion of the history of the Act, see Malone's Louisiana Workmen's Compensation Law and Practice, § 32, p. 36.
[3] La.Const. art. 1, § 22 provides:

"All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."