162

Hillsborough
No. 84-411
No. 84-202
Merrimack
No. 84-310
Strafford
No. 84-234

LOIS ESTABROOK, ADMINISTRATRIX OF THE ESTATE OF
NELSON J. ESTABROOK

v.

AMERICAN HOIST & DERRICK, INC. *& a.* (No. 84-411)

SHEILA TAYLOR, ADMINISTRATRIX OF THE ESTATE OF
JAMES A. TAYLOR

v.

FRANK A. NUTTING, JR., *& a.* (No. 84-202)

DANIEL HAYES AND MARY HAYES

v.

PETER E. STULTZ (No. 84-310)

MARGARET I. SHORTELL

AND

WILLIAM SHORTELL

v.

CARL MITCHELL

AND

JOHN MAMMONE (No. 84-234)

August 15, 1985

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*E. Donald Dufresne* and *Lee C. Nyquist* on the brief, and *Mr. Dufresne* orally), for the plaintiff in No. 84-411.

*Stark & Peltonen P.A.*, of Manchester (*Rodney L. Stark* on the brief), by brief for the defendants Midwest Tank & Construction Manufacturing, Inc. and Midwest Tank & Construction Holding Corporation in No. 84-411.

*James M. Winston*, of Manchester, by brief and orally, for the defendants Stanley Stone and Harry Smith in No. 84-411.

*James S. Yakovakis P.A.*, of Manchester (*Brian T. McDonough* and *James S. Yakovakis* on the brief, and *Mr. Yakovakis* orally), for the defendants Stanley Stone and Harry Smith in No. 84-411.

*Cullity and Kelley*, of Manchester (*George W. Roussos*), for the Independent Insurance Agents of New Hampshire and the New Hampshire Association of Domestic Insurance Companies, as amici curiae, joined in the brief filed by *Brian T. McDonough* and *James*

*S. Yakovakis* for the defendants Stanley Stone and Harry Smith in No. 84-411.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Jack B. Middleton* and *Judy E. Reardon* on the brief, and *Mr. Middleton* orally), for the New Hampshire Trial Lawyers Association, as amicus curiae in No. 84-411.

*Barto & Gfroerer*, of Concord (*Michael G. Gfroerer* and *Mark H. Puffer* on the brief, and *Mr. Gfroerer* orally), for the Alliance of American Insurers, the American Insurance Association, and the National Association of Independent Insurers, as amici curiae in No. 84-411.

*Barry I. Harkaway* and *Clifford R. Kinghorn, Jr.*, of Nashua (*Mr. Harkaway* and *Mr. Kinghorn* on the brief, and *Mr. Harkaway* orally), for the plaintiff in No. 84-202.

*Hamblett & Kerrigan P.A.*, of Nashua (*John V. Dwyer, Jr.*, and *James M. McNamee, Jr.*, on the brief, and *Mr. McNamee* orally), for the defendant Frank A. Nutting, Jr., in No. 84-202.

*Wiggin & Nourie*, of Manchester (*Andrew A. Merrill* and *Thomas P. Manson* on the brief, and *Mr. Merrill* orally), for the defendant Dale Schofield in No. 84-202.

*Leonard & Borrelli*, of Nashua (*Vera R. Borrelli* on the brief and orally), for the defendants Frank A. Nutting, Jr., George A. Fuller, Jr., and Dale Schofield in No. 84-202.

*Stephen R. Fine & Associates P.A.*, of Manchester (*Stephen R. Fine* and *Charles A. Meade* on the brief, and *Mr. Fine* orally), for the plaintiffs in No. 84-310.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Theodore Wadleigh* on the brief and orally), for the defendant in No. 84-310.

*Burns, Bryant, Hinchey, Cox & Shea P.A.*, of Dover (*Paul R. Cox*), for the defendant in No. 84-310, joined in the above brief.

*Shea & Mertens P.A.*, of Wolfeboro (*Edward J. Mertens, II*, and *Lorraine Rogus Sager* on the brief, and *Mr. Mertens* orally), for the plaintiffs in No. 84-234.

*Ransmeier & Spellman*, of Concord (*John C. Ransmeier* and *Steven E. Hengen* on the brief, and *Mr. Ransmeier* orally), for the defendants in No. 84-234.

*Stephen E. Merrill*, attorney general (*James A. Sweeney*, attorney, on the brief), by brief for the New Hampshire Department of Labor, as amicus curiae in Nos. 84-411, 84-202, and 84-310.

PER CURIAM. The plaintiffs in these four consolidated cases challenge the constitutionality of certain provisions of RSA 281:12, II (Supp. 1983), a part of the workers' compensation law. That paragraph bars actions for non-intentional torts by an employee or his personal or legal representatives against "any officer, director, agent, servant or employee" of his employer for personal injury, as defined in RSA 281:2, V (Supp. 1983). We hold that this provision is unconstitutional, except when liability would rest on acts performed by a defendant as the alter ego of a corporate employer while performing a corporate responsibility as described in *Stevens v. Lewis*, 118 N.H. 367, 387 A.2d 637 (1978). One of the cases also challenges the constitutionality of RSA 281:12 (Supp. 1983) insofar as it bars spousal consortium claims against persons named in paragraph II predicated on non-intentional torts. We hold that this provision is unconstitutional as well.

Case No. 84-411 is, *inter alia*, a negligence action for wrongful death brought by the widowed administratrix of the estate of Nelson J. Estabrook. On August 22, 1981, the decedent was an employee at an asphalt plant operated by Lane Construction Company in Manchester. While the decedent was performing maintenance work inside a large mixing machine, his foreman, the defendant Stanley Stone, accidentally activated the mixer, which crushed the decedent and caused his death. The plaintiff brought action against the manufacturer of the mixer and its two successor corporations, as well as against Stone and the plant superintendent, Harry Smith. Stone and Smith moved to dismiss on the ground that action is barred under RSA 281:12, II (Supp. 1983), which provides that an employee subject to the workers' compensation law is conclusively presumed to have waived all rights of action "[e]xcept for intentional torts, against any officer, director, agent, servant or employee acting on behalf of the employer or the employer's insurance carrier." The plaintiff objected that the statutory bar to non-intentional tort actions against co-employees violates the due process clauses of the fifth and fourteenth amendments of the Federal Constitution and part I, article 14 of the State Constitution, and the equal protection clauses of the fourteenth amendment and part I, articles 1 and 12. The Superior Court (*O'Neil*, J.) granted the motion to dismiss. We reverse.

Case No. 84-202 is a negligence action for wrongful death brought by the widowed administratrix of the estate of James A. Taylor. The decedent was a fireman employed by the Town of Hudson. On July 26, 1981, he was a passenger in a tanker firetruck en route to a fire, when the truck failed to negotiate a turn and collided with a pole, crushing the decedent and causing his death. In May, 1983, the

plaintiff brought an action against the decedent's fellow employees, Dale Schofield, the driver of the truck, George A. Fuller, Jr., who maintained the truck, and Frank A. Nutting, Jr., the chief of the department. The defendants moved to dismiss on the ground of the bar to co-employee actions contained in RSA 281:12, II (Supp. 1983), and the plaintiff objected on grounds of due process and equal protection. On September 23, 1983, the plaintiff also moved to add new counts charging that each defendant had acted in a "willful, wanton and reckless manner" and claiming damages for loss of consortium as the decedent's widow and the next friend of her minor son. The defendants objected to the motion to amend as untimely under RSA 556:11, since it was filed more than two years after the decedent's death. The Superior Court (*Flynn*, J.) granted both the motions to amend and the motions to dismiss the original counts. The defendants then filed further motions to dismiss the new counts. The same trial judge ruled that the amendments were timely, but that they failed to allege intentional torts so as to remove the bar of RSA 281:12, II (Supp. 1983) and, in claiming loss of consortium by the widow and son, failed to state causes of action. The court accordingly dismissed the new counts. We reverse the dismissal of the original counts. For this reason, the correctness of dismissing the new counts as alleging death from willful, wanton and reckless action is moot. The dismissals of the new counts, to the extent that they include claims for losses of consortium, have not been briefed or argued and are therefore waived.

Case No. 84-310 includes negligence actions for personal injury and loss of consortium. The plaintiff Daniel Hayes and the defendant were both employees of Treisman Brothers, Inc. On March 9, 1982, the defendant was operating an automobile in which Daniel Hayes was a passenger, each of them acting within the scope of his employment. The automobile collided with a school bus, injuring Daniel Hayes. He then brought a negligence action for personal injuries, and his wife, Mary Hayes, brought a separate action for loss of consortium. The defendant moved to dismiss Daniel Hayes's action on the basis of the bar to co-employee actions contained in RSA 281:12, II (Supp. 1983) and Mary Hayes's action on the basis of the further provision of RSA 281:12, II (Supp. 1983), that the spouse of an employee covered by the chapter "shall have no direct action whether at common law or by statute or otherwise, to recover for . . . damages against any person identified in [paragraphs] I and II." The plaintiff objected on the ground that the statutory provisions were unconstitutional under part I, articles 2, 12 and 14 of the State Constitution. The Superior Court (*Dickson*, J.) transferred without

ruling the question of the constitutionality of RSA 281:12, II (Supp. 1983).

The negligence actions in case No. 84-234 were brought by William Shortell for personal injury and by Margaret Shortell for loss of consortium. William Shortell was on duty as chief of police of the town of Middleton on March 5, 1982, when he entered the town hall and fell through an open trap door in the floor, resulting in serious injury. Earlier in the day the fire chief, John Mammone, and a selectman, Carl Mitchell, had gone together to the town hall, and one of them had opened the trap door to give them access to inspect faulty plumbing. The plaintiffs brought actions against each for negligent failure to close the trap door. The plaintiffs took the position that RSA 281:12, II (Supp. 1983) was inapplicable because neither defendant had been acting in the capacity of an "officer, director, agent, servant or employee" of the town and, further, that the bar to each action contained in § 12 was unconstitutional under part I, articles 2 and 12 of the State Constitution. By agreement, the case proceeded to trial, and at the close of the plaintiffs' evidence on liability the defendants moved for directed verdict. The Superior Court (*Nadeau*, J.) directed a verdict on the ground that the only conclusion reasonably possible on the evidence was that each defendant was an employee of the town and acting as such at the time in question, with the result that the statute barred the actions. We reverse on the ground that the statute is unconstitutional and therefore do not reach the question whether the court erred in finding that the defendants were acting as employees within the scope of their employment. The plaintiffs also appeal two further rulings, the trial court's refusal to compel admission of a fact requested under Superior Court Rule 54, and its refusal to admit into evidence an alleged statement of defense counsel. We sustain the trial court's rulings on these issues.

We begin with the principal issues common to all the present cases, the constitutionality of the statutory bars to actions against co-employees by employees and their spouses. The provisions in question were enacted as amendments to RSA 281:12 by Laws 1978, 46:1. To understand our constitutional analysis of the 1978 amendments, it is necessary to consider the history of the workers' compensation law, RSA chapter 281.

In 1911, New Hampshire became one of the first States to enact a valid workers' compensation law. Laws 1911, ch. 163; *see Mulhall v. Company*, 80 N.H. 194, 201, 115 A. 449, 454 (1921). In recognition of the burdens, delays, inadequate relief and unequal operation of law inherent in common law remedies, *id.* at 196–99, 115 A. at 451–53, the workers' compensation law was "designed to substitute for un-

satisfactory common law remedies in tort a liability without fault with limited compensation capable of ready and early determination." *Bilodeau v. Oliver Stores, Inc.*, 116 N.H. 83, 86, 352 A.2d 741, 743 (1976). Since its passage, the workers' compensation law has undergone several changes. *See, e.g.*, Laws 1947, 266:10 (requiring employee to elect not to be covered by the statute and, instead, to retain common law right of suit); Laws 1959, 187:4 (conclusive presumption of employee's election of benefits); Laws 1978, ch. 46; *Park v. Rockwell Int'l Corp.*, 121 N.H. 894, 895–96, 436 A.2d 1136, 1137–38 (1981).

■ Prior to 1978, New Hampshire law clearly permitted an employee, who had received workers' compensation for injuries sustained in the course of employment, to bring an action against a fellow employee tortfeasor for those same injuries. *Merchants &c. Cas. Co. v. Tuttle*, 98 N.H. 349, 352, 101 A.2d 262, 264 (1953) (acceptance of workers' compensation does not bar an action at law for negligence on behalf of employee against his fellow employee to recover damages for the same injuries); *see Stevens v. Lewis*, 118 N.H. 367, 368–69, 387 A.2d 637, 638 (1978) (New Hampshire law permitting employees covered by workers' compensation to maintain common law tort actions against fellow employees has been adhered to consistently); *Vittum v. N.H. Ins. Co.*, 117 N.H. 1, 5–6, 369 A.2d 184, 187 (1977) (court refused to overrule rule that employee who has received compensation may sue fellow employee, stating that the rule rests on an interpretation of legislative intent and is the settled law of the State).

As one author noted in 1959, "[t]he acceptance of workmen's compensation does not bar an action for negligence on behalf of an injured employee against a fellow employee to recover damages for the same injuries." Burns, *Preparation and Trial of a Tort Action in New Hampshire*, 2 N.H.B.J. 11, 17 (1959). *Accord Butler v. King*, 99 N.H. 150, 154, 106 A.2d 385, 388–89 (1954) (affirming that statute permits a suit by the injured employee against a fellow employee and finding that there is nothing in the language or policy of the compensation law which demands a different result when the defendant is a general contractor); *Stacy v. Company*, 83 N.H. 281, 285–86, 141 A. 467, 469 (1928) (stating that the act concerns only liabilities based upon the relationship of master and servant and does not restrict the rights of workers against persons other than their employers, court held that the only actions which are barred by the acceptance of compensation are actions against the employer); *Cummings v. Bostwick*, 481 F. Supp. 1251, 1252–53 (D.N.H. 1980) (discussion of New Hampshire law permitting fellow employee suits).

In 1978, however, the legislature amended the workers' compensation law to bar negligence actions against fellow employees. Laws 1978, 46:1; *see generally* N.H.S. JOUR. 275–79, 521–29 (1978). The action was apparently in response to two decisions handed down by this court. *See Stevens v. Lewis supra* (employee may maintain common law negligence action against fellow employee even where fellow employee is sole owner of the corporate employer, unless the fellow employee is the alter ego of the corporation); *Ransmeier v. Camp Cody, Inc.*, 117 N.H. 736, 378 A.2d 752 (1977) (administrator of an estate may sue employer for wrongful death because administrator is not "employee" under the statute and because wrongful death was not a common law action barred by the statute).

RSA 281:12, II (Supp. 1983) now provides:

> "An employee of an employer subject to this chapter shall be conclusively presumed to have accepted the provisions hereof and on behalf of himself, or his personal or legal representatives, to have waived all rights of action whether at common law or by statute or otherwise:
>
> I. Against the employer or the employer's insurance carrier; and
>
> II. Except for intentional torts, against any officer, director, agent, servant or employee acting on behalf of the employer or the employer's insurance carrier.
>
> The spouse of an employee entitled to benefits under this chapter or any other person who might otherwise be entitled to recover damages on account of the employee's personal injury or death, shall have no direct action whether at common law or by statute or otherwise, to recover for such damages against any person identified in paragraphs I and II."

While the dissenter makes reference to *LaBounty v. American Insurance Co.*, 122 N.H. 738, 743–44, 451 A.2d 161, 164 (1982) as to what may be the "preferable" rule in this area, that case did not involve a constitutional challenge.

■ We now turn to the plaintiffs' argument that RSA 281:12, II (Supp. 1983), as amended by Laws 1978, 46:1, violates the due process and equal protection clauses of the New Hampshire Constitution. In addressing the plaintiffs' claim, we bear in mind our obligation to interpret the Workers' Compensation Act liberally. *Heinz v. Concord Union School Dist.*, 117 N.H. 214, 219–20, 371 A.2d 1161, 1165 (1977).

The substance of the plaintiffs' argument is that although

workers' compensation schemes satisfy due process requirements if they provide a *quid pro quo* or an adequate substitute for common law rights extinguished under the statutes, RSA 281:12, II (Supp. 1983), as amended by Laws 1978, 46:1, deprives them of their common law rights without providing an adequate *quid pro quo.* Thus, the plaintiffs argue, the statute, as amended, violates their constitutionally protected right to recover for their injuries. *See* N.H. CONST. pt. I, art. 14.

Part I, article 14 of the New Hampshire Constitution guarantees every citizen "a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

 "As indicated in Article 14 the remedies provided are to be provided 'conformably to the laws.' This means the rules of statutory and common law applicable at the time the injury is sustained." *Opinion of the Justices*, 113 N.H. 205, 210, 304 A.2d 881, 885 (1973). " 'No person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit.' " *Id.* (quoting *New York Cent. R.R. v. White*, 243 U.S. 188, 198 (1917)). Hence, part I, article 14 does not preclude the creation of new causes of action or the abolition of old ones to obtain permissible legislative objectives.

 The right to recover for one's injuries, however, is an "important substantive right" under the New Hampshire Constitution, *Carson v. Maurer*, 120 N.H. 925, 931–32, 424 A.2d 825, 830 (1980), and an " 'abolition of the rights of a class of persons . . . to recover damages for their injuries in full would contravene the plain language of article 14, part I of the New Hampshire constitution, *in the absence of provision of a satisfactory substitute . . . .*' " *Id.* at 943, 424 A.2d at 838 (quoting *Opinion of the Justices*, 113 N.H. at 215, 304 A.2d at 888 (Duncan and Grimes, JJ., dissenting)).

In considering the constitutionality of a "no-fault" insurance bill, a majority of this court recognized the above principle when it opined: "[I]njured persons . . . are not left without a remedy. A new system of recovery is substituted for the existing remedy." *Opinion of the Justices*, 113 N.H. at 212, 304 A.2d at 886. The court then compared the bill to the workers' compensation law and concluded: "We are of the opinion that House Bill 79 . . . provides a reasonable substitute for existing rights." *Id.*

 This court recently addressed, directly, the *quid pro quo* requirement in the workers' compensation context. In *Park v. Rock-*

*well Int'l Corp.*, 121 N.H. 894, 436 A.2d 1136 (1981), the plaintiff successfully claimed that RSA 281:12 (Supp. 1979) and RSA 281:22 were unconstitutionally discriminatory against the estates and persons of employees who suffered fatal work-related injuries and left no dependents. We begin our analysis now, as Justice Brock did then, by noting that "workmen's compensation laws withstand constitutional attack on due process grounds because they provide 'a *quid pro quo* for potential tort victims whose . . . rights of action are supplanted by the statute.'" *Id.* at 898, 436 A.2d at 1138 (quoting *Carson v. Maurer*, 120 N.H. at 943, 424 A.2d at 837). Although *Park* recognized that the provisions of RSA chapter 281 generally satisfied the *quid pro quo* requirement, we went on to consider whether the challenged *amendment* to that statute *gave anything in return* for its abrogation of certain employees' rights of action. We found that "[w]hen the legislature adopted [the] amendment in 1978, it failed to provide any increase in benefits or *quid pro quo* in return for eliminating an employee's estate's right to sue." *Id.* at 897, 436 A.2d at 1138.

The legislative grant of immunity to negligent fellow employees in RSA 281:12, II (Supp. 1983), as amended by Laws 1978, 46:1, extinguishes an employee's right to seek recovery of his damages from a fellow employee tortfeasor. Accordingly, the statutory abrogation of this right will satisfy due process only if it provides a *quid pro quo* or an adequate substitute for that right. In resolving this issue, we are confronted with the question of the time at which the *quid pro quo* must be created and the question of the form which the *quid pro quo* must take.

We begin with the question whether the *quid pro quo* must be given or created *at the time* rights are extinguished, or whether it simply must exist under the statutory scheme. Because the provision barring fellow employee suits was added by amendment, the plaintiffs argue that there must be an additional substitute remedy given in exchange for the abrogation of that right. The defendants argue that the *quid pro quo* need only exist under the statutory scheme viewed as a whole. It is our opinion that both assertions are overbroad.

 In determining whether an adequate *quid pro quo* has been provided in return for rights extinguished under an amendment to a statutory scheme, the central issue is not merely one of timing. Nor does the determination involve simply a consideration of whether the statute, as a whole, provides a remedy for the rights it supplants. Rather, both the amendment and the original enactment must be examined to determine whether there is a sufficient relationship

between the two to allow the amendment to be considered in the light of the entire statute. Such an inquiry involves a determination whether the rights restricted under the amendment have a substantial or fundamental relationship to rights affected by the original enactment. It does not involve merely a comparison of the subject matter and purposes of both the amendment and the original enactment. Only if there is a substantial or fundamental relationship between the rights affected under each of the two will we analyze the *quid pro quo* requirement in the light of the entire statute.

The distinction between an inquiry into the rights affected by the enactments, and an inquiry into the statutory objectives, is an important one. Because the *quid pro quo* requirement is founded on the principle that legislation must provide an adequate substitute for *rights* extinguished, it is essential to permitting the use of a general statutory *quid pro quo*, in analyzing the constitutionality of an amendment to the statute, that there be a fundamental relationship between the rights affected by the two.

As previously stated, under the New Hampshire Workers' Compensation Law, the employee gave up his right to seek full recovery of his damages from his employer in exchange for certain limited benefits. The employer gave up his common law defenses in exchange for limited liability. This *quid pro quo* is solely between the employee and the employer. Amendments restricting rights that have a fundamental relationship to the rights underlying that *quid pro quo* may be considered in the light of the entire statute.

In the instant case, we are concerned with an employee's right to sue a *fellow employee*. Until 1978, this right clearly existed under New Hampshire law. The 1978 amendment completely abrogated an employee's right to maintain a negligence action against a fellow employee. Thus, we have before us not just an amendment to a statutory scheme, but an amendment which completely deprives an individual of his right to a remedy—a remedy which co-existed with the statutory scheme for nearly seven decades and which existed prior to the statutory scheme. Nothing in the original act could have been received in exchange for an employee's giving up his right to maintain a negligence action against a fellow employee, because that right was not taken away by the legislation. Under these circumstances, we cannot consider the 1978 amendment abrogating the right to maintain negligence actions against fellow employees in the light of the entire statute because the statute simply did not affect this right.

In fact, in *Park v. Rockwell Int'l Corp.*, 121 N.H. 894, 436 A.2d 1136 (1981), we rejected the notion that, in determining whether the

statutory amendment provided an adequate substitute for the rights extinguished under the amendment and involved in that case, we should look to the statute as a whole. In that case, we stated that, although the workers' compensation law, as a general proposition, may satisfy the *quid pro quo* requirement, the question was whether the 1978 amendment, which abolished additional rights, provided a *quid pro quo*.

Accordingly, we turn to the amendment to determine whether there is an adequate substitute for the rights extinguished under the 1978 amendment in the cases before us. We begin our analysis with an examination of the legislative history of the enactment.

Legislative history makes clear that Laws 1978, 46:1 was enacted in direct response to *Stevens v. Lewis*, 118 N.H. 367, 387 A.2d 638 (1977) and *Ransmeier v. Camp Cody, Inc.*, 117 N.H. 736, 378 A.2d 752 (1977); N.H.S. JOUR. 275, 522 (1978) (amendment is a limited proposal that closes a loophole opened by two recent supreme court decisions); *see Hearings on SB 52 before the Senate Committee on Insurance* (May 11, 1978) (opening statement of Senator Bergeron). Senator Bergeron, the sponsor of the legislation, testified that the provision would clarify language in RSA 281:12 that, as a result of the two supreme court opinions, would permit an action by an employee against a fellow employee for an injury for which the employee had received workers' compensation benefits. *Hearings on SB 52 before the Senate Committee on Insurance* (May 11, 1978) (opening statement of Senator Bergeron).

Testimony during the Senate committee hearings and debate in the Senate reveal that in enacting Laws 1978, 46:1, the Senate was led to believe that SB 52 would *in no way affect* an *employee's rights* under the applicable New Hampshire law *except* to revise the effect of the two supreme court decisions. Testimony at the committee hearing provides, in pertinent part:

> "Senator Bergeron: . . . I think the most important thing that we have to recognize here is that the employee is losing absolutely nothing . . . .
> . . . .
> Senator Preston: Does this disenfranchise any workers of any rights they now have?
>
> Senator Bergeron: No. It simply closes a gap that was opened by these two supreme court decisions.
> . . . .
> George Brusault—N.H. Association of Domestic Insurance Companies: . . . This legislation is very narrowly drawn to affect only the rights of only those two Supreme

Court decision and it will not deprive any citizen in this state rights that have been recognized up until the time of these decisions . . . .

Senator Preston: . . . [D]oes [the section] substantially take away some rights that you now have?

Mr. Brusault: Absolutely not.
. . . .

Senator Rock: . . . How do you as a lawyer feel about this?

Martin Gross: As it happened Senator, my firm happened to be the firm that won the [*Ransmeier*] case—the one that opened the loophole. And now I am sitting here to close the loophole.
. . . .

Senator Rock: Then this does take away some rights?

Mr. Gross: It doesn't take away any right that anyone who is closely connected with the provision and benefits under workmens compensation ever thought existed until the [*Ransmeier*] case came along.
. . . .

Mr. Gross: If you assume that this legislature always intended for there to be a way to get a crack at the employer, then yes this bill does take away that right. I just don't agree with that assumption. It was the Supreme Court which granted that right. . . ."

*Hearings on SB 52 before the Senate Committee on Insurance* (May 11, 1978).

Moreover, relevant language in the Senate hearings provides:

"Senator Bergeron: . . . No benefits here are being taken away from any employee. The only thing we're trying to do is close a gap that was opened up as a result of the supreme court decision, but there are no changes in the existing law. . . ."

N.H.S. JOUR. 276 (1978).

"Senator Bergeron: SB 52 brings us back to the situation that we have always operated from since 1932 and that's that the employee in exchange for the benefits he has received gives up the right to sue.

Senator Hancock: You've said that several times and I don't refute that. What I do dispute is that there are in these two cases rights [that] are being taken away from individuals. . . .

Senator Bergeron: In response to that, there were no rights there prior to the Supreme Court decision . . . . The problem arose with the court decision. They're the ones that made the determination that the right was there. . . .
. . . .

Senator Rock: . . . I attended [the committee] hearing and I was glad that I did because I felt it was a very enlightening hearing and one of the persons who appeared in favor of the bill happened to be the attorney who brought [*Ransmeier*] and in answer to my questions the attorney . . . said they did not in their wildest dreams imagine that that case would prevail and that he was there that day urging us to write this statute this way so that this could not continue to happen. That came from the man who brought the case. I think that tells the story better than anything I can say. . . . I do not feel that anybody's rights are being taken away by this. . . . "

N.H.S. JOUR. 526, 528 (1978).

The legislative history of Laws 1978, 46:1 is replete with remarks concerning the effect of the legislation on the rights of employees. The remarks, however, rather than addressing the protection of rights supplanted by the statute, merely indicate that the legislature amended the workers' compensation law under the clearly erroneous assumption that no rights were being supplanted by the proposed legislation. The senate was of the belief that the legislation did not deprive employees of any rights, despite the fact that for the first 67 years the workers' compensation scheme was in existence, the acceptance of workers' compensation benefits did not bar an action for negligence on behalf of an injured employee against a fellow employee.

Although this court, in reviewing a piece of legislation, has often stated that it will not second guess the wisdom of the legislature in enacting the legislation, we cannot ignore the blatantly erroneous assumption of the legislature in enacting the amendment at issue, especially in view of the fact that the question of the amendment's effect on employees' rights played such a significant role in the decision to amend the statutory scheme.

Given the legislature's belief that the employee was "losing absolutely nothing" under the amendment, it is difficult to discern how we could conclude that the legislation provided an adequate substitute for the rights actually taken away by the statute. The legislature cannot be presumed to have given something in return for taking away something which it had no knowledge existed.

The defendants ask us to ignore the fact that the legislature erroneously believed that the proposed amendment in no way affected any rights of employees, and to begin our inquiry into whether there is an adequate *quid pro quo* at the point at which the legislature abrogated the employees' rights. In other words, they ask us to impute knowledge of the effect of the amendment to the legislature and to find an adequate substitute for the rights supplanted by the amendment. The defendants argue that one of the things that an individual employee is entitled to expect, in return for what he has given up, is freedom from common law suits against him based on industrial accidents in which he is at fault. This brings us to the question of the form which an adequate substitute for rights must take.

We begin by noting that the *quid pro quo* requirement is not satisfied simply by the fact that an individual receives *some* type of benefit under a statute abolishing the individual's rights. *See Park v. Rockwell Int'l Corp.*, 121 N.H. 894, 436 A.2d 1136 (1981) ($1,200 recovery not an adequate substitute for rights to bring wrongful death action eliminated by statute); *see also Wright v. Central Du Page Hosp. Ass'n*, 63 Ill. 2d 313, 347 N.E.2d 736 (1976) (societal *quid pro quo* in lower insurance premiums does not extend to the seriously injured medical malpractice victim). Rather, the essence of the *quid pro quo* requirement is that there be *an adequate substitute* for the rights supplanted by the statute. *See Park v. Rockwell Int'l Corp.*, *supra* at 898–99, 436 A.2d at 1138–39.

Under the amendment at issue in the instant cases, the employees totally lost their rights to maintain negligence actions against fellow employees. Thus, the *quid pro quo* requirement is satisfied only if there is an adequate substitute for this right. Although employees as a class are granted immunity from common law negligence actions under the 1978 amendment, this immunity benefits employees only as potential defendants, not as potential plaintiffs. It is the injured employee whose rights are abolished under the amendment; consequently, it is the injured employee who is entitled to a satisfactory substitute for his rights. The *quid pro quo* cited by defendants does not extend to the injured employee and, therefore, does not bring the provision within the rationale of the cases upholding workers' compensation acts. *See Carson v. Maurer*, 120 N.H. 925, 943, 424 A.2d 825, 837–38 (1980) (quoting *Wright v. Central Du Page Hosp. Ass'n*, *supra* at 328, 347 N.E.2d at 742). Further, there are significant policy reasons for concluding that the 1978 amendment does not provide an adequate substitute for the additional common law rights abolished. As aptly stated by Professor Larson:

"[B]ecause of fixed dollar ceilings on benefits, compensation awards are generally inadequate, both in relation to meeting the needs of the victims of industrial injury under current cost of living levels, and conspicuously in relation to standards that have grown up of what constitutes adequate damages in a personal injury action.

If there is no strong reason of compensation policy for destroying common-law rights as to various classes of third parties, then, every presumption should be on the side of preserving those rights, once basic compensation protection has been assured. The fundamental reasons for negligence liability are the same as they always were. The injured plaintiff has a right to be made whole—not just partly whole—and the more inadequate compensation recoveries appear, the more cogent becomes the argument. Moreover, all the reasons for making the wrongdoer bear the cost of wrongdoing still apply, including the moral rightness of this result as well as the salutary effect it tends to have as an incentive to careful conduct and safe work practices."

A. LARSON, WORKMEN'S COMPENSATION, § 72.50 (Desk ed.).

■■■ Accordingly, we conclude that because nothing has been given in return for eliminating an injured employee's right to maintain a negligence action against a fellow employee, the 1978 amendment does not meet the requirement that a satisfactory substitute for the abolition of rights be provided in order for the amendment to be deemed to conform to part I, article 14 of the New Hampshire Constitution.

■■■ What we have said above about the elimination of co-employee liability applies with equal force to the further provision of Laws 1978, 46:1 that amended RSA 281:12 so as to bar consortium actions against a co-employee by the spouse of an employee. The act in effect before that amendment did not affect any liability between these two parties, and there is no substantial and fundamental relationship between the act and the consortium actions eliminated by the amendment. Since the amendment provides no *quid pro quo* to the spouse of an employee for the elimination of spousal causes of action against a co-employee, the bar to such actions is unconstitutional.

Two questions unrelated to the constitutionality of the statutes remain for our consideration in No. 84-234. They arise because of some remarks made by defense counsel during the deposition of

Edward Badger. At the time of the deposition, the defendants were represented by counsel different from those who now appear. In the course of the deposition, defense counsel referred to an earlier deposition of the defendant John Mammone as the basis for questioning Badger:

> "Q. On Page 15, line 21, I will represent that Mr. Mertens was asking Mr. Mammone some questions similar to what Mr. Mertens did with you today and on line 21, Mr. Mertens asked Mr. Mammone the following question:
>
> 'Okay. Do you know who opened the trap door to go down the stairs?'
>
> Mr. Mammone's answer under oath is the following, line 23:
>
> 'I don't remember. It has to be one or the other because the two of us were there.'
>
> Is that an accurate reading of that, sir?
>
> A. Yes.
>
> Q. Therefore, I'll represent that the two of us to which Mr. Mammone refers on the top of Page 16 is Mr. Mertens—excuse me—is Mr. Mitchell or Mr. Mammone. Therefore, Mr. Mammone's own testimony at his deposition was that on or about March 5, 1983, either he or Mr. Mitchell or both left the trap door open.
>
> MR. MERTENS: I'll object to the form of the statement. It isn't even a question. Go ahead.
>
> Q. You may make any other kind of interpretation you like to that statement but *I will represent that they are saying that either one of them or both of them left the trap door open at the time in question.*"

(Emphasis added.)

On the basis of the emphasized language of defense counsel, counsel for the plaintiffs later made a request under Superior Court Rule 54 that the defendants admit facts including the following:

> "2. That the Defendants opened the trap door to the cellar to inspect something in the cellar.
>
> 3. That the Defendant John Mammone failed to close the trap door after completing the inspection.
>
> 4. That the Defendant Carl Mitchell failed to close the trap door after completing the inspection."

The defendants refused on the ground that the language of the requests distorted prior testimony. Plaintiffs' counsel then filed a motion, the text of which is not before us, to compel the admissions, which was denied. At trial he sought to bring the emphasized portions of defense counsel's statement before the jury in the course of questioning each defendant and Edward Badger. The trial judge sustained the defendant's objection each time.

■ The plaintiffs' appeal from the court's refusal to compel the requested admissions rests on a misconception of Superior Court Rule 54. The rule does not provide for compulsion by the court, but for the reimbursement of expenses, including counsel fees, incurred in proving a fact denied unreasonably or in bad faith. *See* R. WIE-BUSCH, 4 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCE-DURE § 914, at 542–43 (1984).

Turning to the related appeals from the refusal to allow the emphasized portion of the statement of defense counsel to be brought before the jury, the plaintiffs claim that the statement could properly be quoted as the basis for a question, because counsel's statement was an admission of fact binding on his clients. The trial court properly rejected this argument.

■ ■ While counsel may effectively admit matters of fact, *see Alton v. Gilmanton*, 2 N.H. 520, 520 (1823), and otherwise bind his client when acting within the scope of his authority, *see Norberg v. Fitzgerald*, 122 N.H. 1080, 1082, 453 A.2d 1301, 1303 (1982), it is obvious that defense counsel was not making an admission when he took Edward Badger's deposition. He was purporting to summarize prior testimony as the basis for a question on deposition. In doing so, he inaccurately referred to testimony about opening the trap door at some point as an admission about who "left" the door open prior to William Shortell's entry into the town hall. Since counsel's remark was neither an admission nor an accurate statement of fact about the prior deposition testimony, the trial court properly kept it from the jury.

*No. 84-411 reversed; No. 84-202 reversed as to dismissal of original counts; No. 84-310 remanded for ruling; No. 84-234 reversed.*

BROCK, J., concurred specially in the result only; SOUTER, J., dissented.

BROCK, J., concurring specially in the result only: I disagree with my brothers' analysis of *Park* and its application to this case but

conclude that the unusual legislative history in this case supports the result reached by the majority.

SOUTER, J., dissenting: The legislative history of RSA 281:12, II (Supp. 1983) would leave anyone reluctant to dissent from the majority who hold the statute unconstitutional. The conclusion is inescapable that at least some members of the legislature who voted to enact the 1978 amendments in question did so on the erroneous assumption that they would eliminate no cause of action that had been recognized prior to *Ransmeier v. Camp Cody, Inc.*, 117 N.H. 736, 378 A.2d 752 (1977) or *Stevens v. Lewis*, 118 N.H. 367, 387 A.2d 637 (1978). The majority opinion in this constitutional decision, however, necessarily rests on more than legislative history, and it is from that opinion's constitutional analysis that I must respectfully dissent.

The majority opinion has described in detail how the legislature enacted the provisions in question as amendments to the workers' compensation act, RSA chapter 281. Laws 1978, 46:1. The amendments eliminated causes of action as between co-employees, or their representatives, for non-intentional torts arising out of employment. They also eliminated consortium actions against a co-employee by an employee's spouse based on a work-related non-intentional tort.

The several plaintiffs in these cases have invoked two broad grounds for attacking the constitutionality of these statutory amendments: they claim that the amendments offend standards of due process under the State and National Constitutions (part I, article 14 and the fifth and fourteenth amendments, respectively) and that they result in a denial of equal protection (part I, article 12, and the fourteenth amendment, respectively).

Although the majority of this court see these cases as properly raising both due process and equal protection issues, the authority cited in their opinion leads me to doubt that the cases may properly be viewed as raising a question of due process under part I, article 14 of the State Constitution (every subject entitled to a certain remedy). *See Opinion of the Justices*, 113 N.H. 205, 210, 304 A.2d 881, 885 (1973); *see also Oliver v. Travelers Ins. Co.*, 103 Wis. 2d 644, 309 N.W. 2d 383 (1981); *cf. Opinion of the Justices supra* (Duncan and Grimes, JJ., dissenting). And I do not understand the majority opinion to rest on a federal due process ground. I do agree with the majority, however, that the cases raise a common issue of equal protection, as the majority indicate by their reliance on *Park v. Rockwell Int'l Corp.*, 121 N.H. 894, 436 A.2d 1136 (1981) and *Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825 (1980).

When we view these as equal protection cases, however, there are

facts that force us to ask whether the majority result follows from a sound constitutional analysis. The workers' compensation statutes of the great majority of states have eliminated co-employee and consortium actions of the sort in issue here. 2A A. LARSON, LAW OF WORKMEN'S COMPENSATION §§ 66.20, 72.20 (1983). Cases upholding such statutes in the face of various constitutional challenges are numerous. *See, e.g., Middleton v. Texas Power & Light Co.,* 249 U.S. 152 (1919); *Carr v. United States,* 422 F.2d 1007 (4th Cir. 1970); *Nations v. Morris,* 331 F. Supp. 771 (E.D. La. 1971), *aff'd* 483 F.2d 577 (5th Cir.), *cert. denied,* 414 U.S. 1071 (1973); *Saala v. McFarland,* 41 Cal. Rptr. 530 (Cal. App. 1964), *rev'd on other grounds,* 63 Cal. 2d 124, 45 Cal. Rptr. 144 (1965); *Lowman v. Stafford,* 226 Cal. App. 2d 31, 37 Cal. Rptr. 681 (1964); *Kandt v. Evans,* 645 P.2d 1300 (Colo. 1982); *Keogh v. Bridgeport,* 187 Conn. 53, 444 A.2d 225 (1982); *Iglesia v. Floran,* 394 So. 2d 994 (Fla. 1981); *Mier v. Staley,* 28 Ill. App. 3d 373, 329 N.E.2d 1 (1975); *Seivert v. Resnick,* 342 N.W.2d 484 (Iowa 1984); *Boyd v. Barton Transfer & Storage, Inc.,* 580 P.2d 1366 (Kan. App. 1978); *Bazley v. Tortorich,* 397 So. 2d 475 (La. 1981); *Perez v. Continental Cas. Co.,* 367 So. 2d 1284 (La. App. 1979); *Jones v. Bouza,* 7 Mich. App. 561, 152 N.W.2d 393 (1967); *Fellows v. Seymour,* 13 N.Y.S.2d 803 (1939); *Jadosh v. Goeringer,* 442 Pa. 451, 275 A.2d 58 (1971); *Hand v. Greyhound Corp.,* 49 Wash. 2d 171, 299 P.2d 554 (1956); *Crawford v. Parsons,* 141 W. Va. 752, 92 S.E.2d 913 (1956); *Oliver v. Travelers Insurance Co.,* 103 Wis. 2d 644, 309 N.W.2d 383 (1981); *Meyer v. Kendig,* 641 P.2d 1235 (Wyo. 1982).

These cases include instances in which the co-employee cause of action was eliminated by later amendment to the basic statute. *See Meyer v. Kendig,* 641 P.2d 1235 (Wyo. 1982); *Perez v. Continental Cas. Co.,* 367 So. 2d 1284 (La. App. 1979). And only two State supreme courts have found the elimination of co-employee liability unconstitutional on any analysis. *See Grantham v. Denke,* 359 So. 2d 785 (Ala. 1978); *Halenar v. Superior Court in & for Cty. of Maricopa,* 109 Ariz. 27, 504 P.2d 928 (1972).

It is even more unsettling to recall the conclusion reached unanimously by this court in *LaBounty v. American Insurance Co.,* 122 N.H. 738, 743–44, 451 A.2d 161, 164 (1982), that the rule prohibiting actions between co-employees is preferable to the rule permitting them. Thus, when the majority's analysis leads the court to strike down as unconstitutional what it found desirable on the merits only three years ago, we should at least question that analysis.

The analysis rests upon the opinion for a majority of three justices in *Park v. Rockwell Int'l Corp.,* 121 N.H. 894, 436 A.2d 1136 (1981). Like the matter before us, the issue in *Park* arose on an equal protection challenge to a feature of the 1978 amendments to the

workers' compensation act, eliminating wrongful death actions brought against an employer by the representatives of an employee decedent. *See* RSA 281:12, I (Supp. 1983), as amended by Laws 1978, 46:1. As a touchstone for applying the standards of reasonableness and fair and substantial relationship under the middle-tier equal protection test of *Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825 (1980), the court in *Park* adopted what it called a quid pro quo test: the legislature may not eliminate a cause of action previously available to a class of potential plaintiffs without providing an adequately corresponding benefit to the members of that class in return. *Park v. Rockwell Int'l Corp.*, *supra* at 897–98, 436 A.2d at 1138.

Since the accepted rationale for workers' compensation statutes has been that they provide a quid pro quo for the restriction or elimination of common law rights, *see* 2A A. LARSON, LAW OF WORKMEN'S COMPENSATION at § 72.22, there is at first glance nothing remarkable about considering the adequacy of a supposed quid pro quo when asking whether the classification resulting from the provisions of such a statute is reasonable, or supportable on some rational basis. *See Carson v. Maurer supra; Cargill v. City of Rochester*, 119 N.H. 661, 406 A.2d 704 (1979). What was crucial about *Park's* quid pro quo test, however, was the limitation that it placed on the benefit that could qualify as a legitimate quid pro quo for the elimination or limitation at issue. For the court restricted the quid pro quo to two possibilities: (a) a benefit conferred by the very amendment to the workers' compensation act that abridged the preexisting right of action, or (b) a benefit conferred by the act before amendment, but provided as compensation for the specific harm that had been the subject of the cause of action eliminated or limited by the amendment. *See Park v. Rockwell Int'l Corp.*, 121 N.H. at 897, 436 A.2d at 1138 (*e.g.*, $1,200 burial expenses under RSA 281:22, IV (1977) for wrongful death). Since the amendment at issue in *Park* conferred no benefit and since the burial expense provided by the statute was in no sense equivalent in value even to a conservative plaintiff's verdict in a death case, assuming the jury found liability, the court held that the elimination of the wrongful death action was unconstitutional.

Thus, what the court did not do in *Park* was to assess the adequacy of the quid pro quo for the restriction in question by considering that restriction in the context of the comprehensive statutory scheme of benefits and restrictions. In other words, the court did not weigh the merits of the restrictive classification by considering it as one of a number of restrictions placed on the common law rights of employees, their spouses, dependents and representatives, in return

for which the statute provided a series of direct and indirect benefits to the same spectrum of people.

To be sure, the opinion in *Park* did not expressly state that the total benefits conferred generally by the workers' compensation act must be ignored when considering an equal protection challenge to a specific amendment restricting a right of action. But in today's opinion the court explicitly takes this step, although it takes the step subject to a qualification. The majority hold today that a new and adequate quid pro quo must be provided "at the time rights [of action] are extinguished" unless "there is a substantial and fundamental relationship between the rights affected" by the earlier act and those restricted by the later amendment. Where there is such a relationship, but only then, "will we analyze the *quid pro quo* requirement in the light of the entire statute."

The majority then apply the quid pro quo test as so articulated by striking down the 1978 amendments in question. Since the pre-1978 act affected only the employee's rights of action against his employer, and since the amendment affects his and his spouse's rights of action against his fellow employee, the majority find no "substantial and fundamental relationship" between the rights affected by the earlier act and those eliminated by the later amendment. Therefore it follows for the majority that the 1978 amendments could not pass the quid pro quo test unless they provided new benefits to the affected employees and spouses. Since the amendments did not provide any such benefits, the majority hold that they are unconstitutional.

Before attempting to evaluate the analysis that underlies this quid pro quo test, it will be instructive to consider some of its other actual and anticipated applications. First we may look back to *Park*. Since the majority do not suggest that today's decision would affect the result in that case, we have to assume that there was no substantial and fundamental relationship between the affected rights considered there. That was so presumably because the earlier act dealt with the rights of action of a living employee, whereas the amendment considered in *Park* dealt with his representative's right of action to recover for the employee's wrongful death.

On like reasoning, it is clear that the majority would find no fundamental relationship between the earlier act and the amendments enacted by Laws 1971, 539:5 and Laws 1973, 481:3, which barred consortium actions against a spouse's employer for work-related injury. *See* RSA 281:12 (Supp. 1983); *O'Keefe v. Associated Grocers,* 117 N.H. 132, 370 A.2d 261 (1977); *Archie v. Hampton,* 112 N.H. 13, 287 A.2d 622 (1972); *LaBonte v. Nat'l Gypsum Co.,* 110 N.H. 314, 269 A.2d 634 (1970). Consistently with the treatment of the consortium

claims in today's cases, the majority would reason that the earlier act dealt with the rights of action of an employee, not with the independent statutory right of a spouse to bring a consortium action. Since the 1971 amendment that barred consortium actions provided no new benefit to spouses, presumably the majority would find that amendment just as unconstitutional as they now find the bar to a consortium action against a spouse's co-employee.

Indeed, on the majority's view there is a question of the constitutionality of what I assume was the most significant of all amendments to the workers' compensation act, the elimination of the employee's right to elect between statutory benefits and the common law right of action against the employer. Laws 1959, 187:4. While the issue is not free from doubt, unconstitutionality would be a strong possibility under the majority's quid pro quo test.

Although the 1959 amending act provided some increases in benefits, see Laws 1959, 187:3, :6, :12, :13, :14, it is questionable that the majority would find that they were generous enough to be an adequate substitute for the rights of action extinguished. Hence, Laws 1959, 187:4 may well be unconstitutional unless there is a "substantial and fundamental relationship between the rights affected" by the earlier act and those restricted by the amendment. The existence of such a relationship, however, is doubtful. The right "affected" by the amendment in 1959 was the employee's common law right of action against the employer, which the amendment eliminated. But whether the prior law had "affected" that right within the meaning of the majority opinion is questionable. Laws 1947, 266:10 had required an employee to elect to retain his common law rights, but it had not eliminated them or restricted the scope of recovery if an employee did elect to proceed at common law. Thus there is a real question whether the "substantial and fundamental relationship" exception could apply at all for judging the adequacy of quid pro quo for the 1959 amendment.

The conclusion that emerges from these examples is that the majority's quid pro quo analysis will always, or almost always, require a later restrictive amendment to the workers' compensation act to be supported by a simultaneously enacted provision for a new benefit. The supposed exception to the rigor of this test, for cases in which there is a "substantial and fundamental relationship" between rights affected by the preexisting and amending acts, is only apparent. In practice the majority view will doom virtually all subsequent amendments unaccompanied by new benefits.

It is fair to say, therefore, that on the majority's analysis the date on which a restrictive provision is enacted can be dispositive of its constitutionality. If a given restriction was enacted originally as

part of a package of workers' compensation benefits and restrictions, its constitutionality would be assessed by weighing it, along with the act's other restrictions of common law rights of action, against all the statutory benefits. This approach would give substantial deference to the legislative judgment that the restriction properly belonged in the total statutory scheme. But if we assume the same set of statutory benefits and restrictions, the constitutionality of a restriction enacted as a later amendment will be judged in isolation from the rest of the act. This approach refuses in effect to accord any deference to the legislative judgment that the restriction belongs in the act. The constitutional result could be, and for our examples almost certainly would be, different. Thus, other things being equal, under the majority's quid pro quo test legislative timing is not merely relevant but practically dispositive in dealing with an equal protection challenge.

What is basically objectionable about the majority's position is that it provides no reason in principle for giving such dispositive significance to legislative timing and for setting up such disparate presumptions affecting constitutionality in the workers' compensation context. Certainly there is no reason related to the merits of such an act's provisions.

Rather, the majority's position fractures a given level or tier of equal protection analysis by employing within it a double standard of reasonableness or rationality. This can only be seen as the reflection of a bias against the lessons of experience. For when the majority say that the legislature may not add a restrictive amendment without providing a new and adequate benefit, they in effect say that the legislature may not improve a statute in the light of experience, without requiring the employer to pay an added price for the improvement. The tendency of such a position can only be to discourage the legislature from profiting from experience. I say, on the contrary, that we should not place a tax on the very experience that Holmes called the life of the law. The anti-historical bias of the majority position has no warrant in the Constitution and should have no place in the law that interprets it.

The court should accordingly decline to make legislative timing dispositive of the present constitutional challenges, and should consider these amendments in the context of the entire workers' compensation act. If the court were to do so, it is apparent that the combined benefits of the whole act provide fair recompense for the restrictions that include those at issue in these cases.

Briefly stated, the victim of harm caused by a co-employee is entitled to prompt benefits from his employer regardless of his co-employee's fault and regardless of his own fault, in the absence of

intoxication. *See* RSA 281:15 (Supp. 1983). Moreover, he will himself be immune from liability to a co-employee even when he and he alone is at fault. It is therefore not unreasonable to restrict his common law right of action against the co-employee. Since the spouse of a co-employee victim will be benefitted indirectly when the victim receives such statutory benefits even when the victim's injury was not the result of a co-employee's fault, and since the spouse will similarly be benefitted by the spousal employee's immunity, it is equally reasonable to restrict the spouse's consortium action in those cases where there is fault on the part of a co-employee.

These considerations indicate that there is no reason to reject the legislative judgment that the restrictions in question here are appropriate in the context of the entire act and result in no classifications that violate standards of equal protection. Indeed, taking this broader view, the result would be the same whether we judged these equal protection claims under the rational basis test, *see Cargill v. City of Rochester*, 119 N.H. 661, 406 A.2d 704 (1979); *Belkner v. Preston*, 115 N.H. 15, 332 A.2d 168 (1975), or under the middle tier test of *Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825 (1980).

I therefore respectfully dissent from the application of the narrow *Park* analysis of quid pro quo, which leads the majority to strike down a provision that this court in *LaBounty v. American Insurance Co.*, 122 N.H. 738, 451 A.2d 161 (1982), declared to be the better rule of substantive law.