Marlin A. STANISLAUS, Appellant,

v.

PARMALEE INDUSTRIES, INC., et al., Respondents.

No. WD 38569.

Missouri Court of Appeals, Western District.

March 24, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 1987.

Application to Transfer Denied June 16, 1987.

William D. Adkins and Steven L. Hobson of counsel, Liberty, for appellant.

Lyman Field, of counsel; Field, Gentry, Benjamin and Robertson, Kansas City, for respondents.

Before PRITCHARD, P.J., and MANFORD and BERREY, JJ.

PRITCHARD, Presiding Judge.

Appellant was working on the assembly line for Allis-Chalmers Corporation when, on June 27, 1979, a flying object struck his safety glasses, which shattered, and a shard lodged in his left eye, causing injury and permanent vision impairment. The original suit for negligence by appellant included Allis-Chalmers, but the trial court sustained a motion for summary judgment for it upon the ground that appellant's exclusive remedy was under Chapter 287, RSMo 1978, the Workers' Compensation Act. That judgment was not appealed.

Then appellant filed his first amended petition against Parmalee Industries, Inc., the manufacturer of his safety glasses, and its chief engineer; U.S. Safety Services Company, the seller of the glasses; and Leo J. Rush, Allis-Chalmers' Safety Service Manager and also appellant's co-employee. Settlement was effected by all defendants except Rush. He filed a verified motion to dismiss for failure to state a claim upon which relief could be granted, which was sustained by the trial court.

Appellant's amended petition first makes "Allegations Common to All Counts", and as relevant to Rush: 3. Defendant LEO RUSH, at all relevant times herein, was an individual residing in Blue Springs, Jackson County, Missouri and was employed as Safety Service Manager by the plaintiff's employer, Allis Chalmers Corp. and was in control of furnishing and procuring safety glasses for plaintiff and co-employees for their use while working on the Allis Chalmers Corp. assembly line. * * * 6. * * * While working on the Allis Chalmers Corp. assembly line, the left safety glass lense worn by plaintiff, as aforementioned, was struck by an object which caused the safety glass to shatter sending sharp fragments of glass into plaintiff's left eye, causing severe and permanent injury and blindness, as hereinafter more fully set

forth. The breakage was caused and permitted by flaws and inadequacies in the glasses."

Specific allegations as to Rush are set out in Count IV:

"FIRST: Defendant RUSH purchased safety glasses, including those which injured plaintiff, with glass lenses when he knew or should have known that said lenses were more dangerous and likely to cause injury and damage to the users thereof, including the plaintiff *then were* [when there were?] better quality and more modern lenses of plastic.

"SECOND: He negligently and carelessly failed to warn or instruct the plaintiff and others like plaintiff and to deliver with them any warnings provided by manufacturers or others for safety glasses advising that safety glasses, even though denominated and advertised as such, were breakable and the load and breakage factors thereof could be readily exceeded causing eye injury or blindness. Such failure of warning and passing along of warnings was negligently and carelessly suffered and permitted by defendant RUSH when by ordinary care he knew or should have known that his negligent act and omission would cause injury or blindness.

"THIRD: Defendant RUSH, even though it was within his job description and employment obligation to do so, negligently failed to inspect the glasses provided to the plaintiff and others and failed to inquire into and determine that reasonable quality control tests had been performed thereon with the result that defendant RUSH negligently delivered not only inadequate but also flawed and defective glasses to the plaintiff STANISLAUS.

"FOURTH: Defendant RUSH failed to conduct classes or give instruction to the wearers of such glasses as to their limitations and give detailed information thereof instead, permitting users within the Allis Chalmers plant, including plaintiff STANISLAUS, to believe that their eyes were thereby protected from all forces operating within the plant when such protections were not actually afforded by the glasses that he negligently provided.

"FIFTH: Defendant RUSH failed to perform his duties as safety service manager for Allis Chalmers Corp. which included providing safe, sound, and adequate and otherwise unflawed instrumentalities including safety glasses."

The question here is whether the pleadings allege any negligent act of *misfeasance,* i.e., an affirmative act above and beyond mere *nonfeasance,* i.e., a failure to act, of Rush arising out of his duties and obligations owed by him as Safety Service Manager to his employer, Allis-Chalmers.

In the prohibition case of *State ex rel. Badami and Lang v. Gaertner,* 630 S.W.2d 175 (Mo.App.1982), the question was first considered in this state. In the underlying case there, Lott sought to sue the corporate president and the production manager of Lott's employer, Mid-America Fiber Company, for injuries to his hand when it was drawn into a shredding machine. It was alleged that Mid-America had delegated to each defendant the duty to provide fellow employees with a reasonably safe place to work, and that each of the defendants were thereby responsible for the detection, correction and prevention of work practices and working conditions which would render the plant not reasonably safe for workmen. It was also alleged that defendants knew or could have known of the danger of the shredding machine and the absence of adequate safety devices thereon. The Badami court traced the history of the development of the "misfeasance-nonfeasance" concepts of co-employee negligence, and noted the holding in *Sylcox v. National Lead Co.,* 225 Mo.App. 543, 38 S.W.2d 497 (1931), recognizing the liability of a co-employee to a fellow employee as a "third person" under the workmen's compensation law; that at common law one servant is liable to another for his own misfeasance, there being nothing in the Compensation Act which disturbs that common law relationship—an employee becomes liable to a fellow employee when he breaches a common law duty owed to the fellow employee independent of any master-servant or agent-principal relation. The court reviewed cases from other states,

rejecting those which hold that the immunity granted to the employer under the workmen's compensation law also applies to employees whose negligence caused the injury regardless of the nature of that negligence. At page 179, the court cited the Wisconsin decisions which hold that a corporate officer or supervisory employee performs in a dual capacity, having "immunity under the workmen's compensation law where his negligence is based upon a general non-delegable duty of the employer; he does not have immunity where he does an affirmative act causing or increasing the risk of injury. Something 'extra' is required beyond a breach of his duty of general supervision and safety, for that duty is owed to the employer, not the employee. *Kruse v. Schieve*, 61 Wis.2d 421, 213 N.W.2d 64 (1973); *Kruse v. Schieve*, 72 Wis.2d 126, 240 N.W.2d 159 (1976); *Laffin v. Chemical Supply Co.*, 77 Wis.2d 353, 253 N.W.2d 51 (1977)." Other states adopting a comparable approach are there listed. At page 180 of the Badami decision, it was stated that the factual situation presented the determination of the scope of immunity from liability granted by statute, and to impose upon executive officers or supervisory personnel personal liability for an accident arising from a condition of employment which a jury might find unsafe would almost mandate that the employer provide indemnity to such employees, which would effectively destroy the immunity provisions (to the employer) of the workmen's compensation law. At page 180[2,3], it was said that the approach developed by the Wisconsin courts comes closest to defining the intent of our legislature; "[c]harging the employee chosen to implement the employer's duty to provide a reasonably safe place to work merely with the general failure to fulfill that duty charges no actionable negligence. Something more must be charged." Plaintiff charged defendant with failure to provide him a reasonably safe place to work—nothing more, which was not actionable negligence, hence the preliminary rule in prohibition was made absolute.

It seems clear that the Badami court retained the misfeasance-nonfeasance concepts of co-employee cases announced in prior cases. It unequivocally held that a co-employee's failure to perform a duty delegated to him by his employer (an omission of duty) does not give rise to a cause of action by a fellow employee injured by reason of that omission. It did not place the decision exclusively on an immunity granted to the co-employee by the statute, as apparently the Wisconsin courts have done, although quite apparently immunity of the employer under the Act, insofar as it is granted for the negligent performance of an act done for the employer, is an important and basic factor. It was so noted in *Parker v. St. Louis County Water Co.*, 668 S.W.2d 182, 183[1–4] (Mo.App.1984), "An employee chosen to implement the employer's duty to provide a reasonably safe place to work enjoys the same immunity [of the employer] for mere failure to discharge that duty. (Citing *Badami*) Therefore, a petition which charges a supervisory employee with the general failure to fulfill that duty pleads no actionable negligence." In Parker, defendants sought to bring in as third-party defendants, Parker's co-employees. The third party petition premised the co-employees' liability upon the failure to require safety measures or provide safe tools or appliances, in substance, a failure to provide plaintiff with a safe place to work, and it was held that they were immune from liability for indemnity or contribution.

In *McCoy v. Liberty Foundry Company, et al.*, 635 S.W.2d 60 (Mo.App.1982), in order to remove the case from the Compensation Act's jurisdiction, plaintiff sued the corporate employer and its officers and directors (supervisory employees) on the theory that his contracting of silicosis over 14 years of employment were intentional acts and omissions relating to safety in the work place. Held, citing Larsen, § 68.13, that there was no allegation of deliberate infliction of harm by the corporate employer, and no allegation of misfeasance of the supervisors *beyond* a breach of their duty of general supervision, hence no actionable claim was stated and the claims were properly dismissed. See also *Rhodes v. Rogers*,

675 S.W.2d 107 (Mo.App.1984), where plaintiff sought unsuccessfully to charge his partner with an intentional tort in pouring gasoline in a tire in order to remove the case from the jurisdiction of the Worker's Compensation Act. Appellant does not charge Rush with an intentional infliction of injury, so these two cases are not helpful to him.

In *Craft v. Scaman*, 715 S.W.2d 531, 536 (Mo.App.1986), the court stated that the Badami court "adopted" the Wisconsin approach. Appellant quarrels with that statement, saying that the Badami case merely applied the traditional nonfeasance-misfeasance distinctions, speaking of the supervisor's failure to perform the duty, assigned to him by the employer, to provide the fellow employee with a reasonably safe place to work, recognizing that that duty was owed to his employer by reason of his contract of employment, to which a fellow employee is not in privity and to which he is a stranger. While that reasoning is persuasive, it must be said that if the Badami decision did not adopt the Wisconsin approach expressly, it certainly came close, especially in its holding that "Charging the employee chosen to implement the employer's duty to provide a reasonably safe place to work merely with the general failure to fulfill that duty charges no actionable negligence", which is comparable to Wisconsin's holding, "Something 'extra' is required beyond a breach of his duty of general supervision and safety, for that duty is owed to the employer, not the employee."

Note that the Craft case, supra, held that the supervisor was liable in tort to his fellow employee because when he negligently and carelessly applied friction to the spinning reel of fuse, causing a fire which injured plaintiff, he doffed his supervisory cap and donned the cap of a co-employee, which caused him to be a "third person" not entitled to immunity under the Worker's Compensation Law. That act did not involve any general, non-delegable duty of the employer, such as a duty to provide a reasonably safe place to work or safe appliances. A similar situation was in *Martinez v. Midland Bank & Trust Co.*, 652 S.W.2d 193, 201 (Mo.App.1983), where worker's compensation death benefits were collected from decedent's employer, Gibson & Bowles, Inc., and under an amended petition, its executive officer, W.R. Gibson, who had joined with other defendants, Midland and North Star in the construction of a sewer line, which collapsed on decedent, did not have the protection of the Badami case because he was then doing far more than merely failing to perform a Gibson & Bowles duty to furnish Martinez a safe place to work.

Appellant contends that his allegations speak to Rush's misfeasance, the negligent doing of a thing which he should have done properly. He says that the act triggering Rush's liability is his undertaking of the contractual duties with Allis-Chalmers. Alluding to the allegations set forth above, it is clear that as Safety Manager, Rush, in control of furnishing and procuring safety glasses, was performing a delegated duty of the employer, to furnish adequate safety appliances for employees' use in the work place. The gist of paragraph FIRST (read with Paragraph FIFTH) is that Rush *failed* to purchase safety glasses which were less dangerous and less likely to cause injury and damage such as those with plastic lenses. Paragraph SECOND charges that Rush *failed* to warn or instruct plaintiff and others, or to deliver manufacturers' warnings that safety glasses were breakable. THIRD, Rush *failed* to inspect the glasses or to inquire as to quality control tests which had been done. FOURTH, Rush *failed* to conduct classes or give instruction to the wearers of such glasses as to their limitations. FIFTH, and importantly, "Defendant RUSH *failed* to perform his duties as safety service manager for Allis Chalmers Corp. which included providing safe, sound, and adequate and otherwise unflawed instrumentalities including safety glasses." These are all acts of omission of duties owed by Rush to his employer, which constituted mere nonfeasance, which duties had been delegated to him. Under the Badami decision and its progeny, Rush is not liable personally for the non-performance of those duties, none of which were independent of his duties to

his employer, in whose shoes he stands under the allegations in this case.

The judgment is affirmed.

All concur.