Rockingham
No. 87-308

RICHARD N. ROUNDS & a.

v.

STANDEX INTERNATIONAL & a.

November 4, 1988

*Shaheen, Cappiello, Stein & Gordon*, of Concord, and *Laura L. Hall*, of Concord (*Steven M. Gordon* and *Ms. Hall* on the brief, and *Mr. Gordon* orally), for the plaintiff Richard Rounds.

*Law Offices of Kenneth G. Bouchard*, of Manchester (*Kenneth G. Bouchard* and *Paul B. Kleinman* on the brief, and *Mr. Bouchard* orally), for the defendant Ralph P. White.

*Orr and Reno P.A.*, of Concord (*Peter W. Mosseau* on the brief and orally), for the defendants Joseph Wirtz, Frank Stewart and Carl Patten.

*Burns, Bryant, Hinchey, Cox and Shea P.A.*, of Dover (*James H. Schulte* on the brief), by brief for Stephen M. Buslovich, as *amicus curiae.*

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Andrew D. Dunn* on the brief), by brief for James F. Watkins, as *amicus curiae.*

*Orr & Reno P.A.*, of Concord (*Peter W. Mosseau* on the brief), by brief for Howard Williams, as *amicus curiae.*

BROCK, C.J.   The plaintiff, Richard N. Rounds, appeals an order of the Superior Court (*Gray*, J.) dismissing his negligence action against the defendants Ralph P. White, Joseph Wirtz, Frank Stewart and Carl Patten, for injuries sustained by Rounds during the course of his employment at Troy Mills, Inc., where the defendants also were employed. For the reasons that follow, we affirm.

In December 1984, plaintiff Rounds was injured while operating a textile-rolling machine at Troy Mills, and he received workers' compensation benefits as a consequence. In January 1985, the plaintiffs brought a products liability action against Standex International, the successor to the company that had manufactured the Troy Mills textile-rolling equipment.

In August 1985, this court decided *Estabrook v. American Hoist & Derrick, Inc.*, 127 N.H. 162, 498 A.2d 741 (1985), which invalidated the statutory bar to actions against co-employees for non-intentional torts, *id.* at 178, 180, 498 A.2d at 751–52; *see* RSA 281:12, II; *see also* RSA 281:14, I. Thereafter, the plaintiffs amended their writ to include as defendants White, Wirtz, Stewart, and Patten, who were, respectively, the Troy Mills president, director of personnel responsible for safety, foreman in charge of Rounds' shift, and plant engineer. As to each individual defendant, the assertions were identical. The plaintiffs claimed: (1) that each defendant had "a duty to provide plaintiff Rounds with a safe workplace and to exercise reasonable care to prevent injury"; (2) that each breached that duty in requiring Rounds to work on a machine that was unreasonably dangerous because its safety devices had been disabled, in failing to display warnings of the machine's hazards, in failing to train and supervise Rounds properly, in failing to appoint a committee or inspector to oversee plant safety, and in failing to enforce industry safety standards; and (3) that the breach caused Rounds' injuries. In addition to the claims of Rounds himself, the writ contained his wife's claims for

loss of consortium and services, and his children's claims for loss of companionship, society, comfort and services.

The defendants moved for dismissal of the claims of Rounds and his children for failure to state causes of action. They contended that the essence of Rounds' complaint was their alleged breach of the duty to maintain a safe workplace, which duty obligated Troy Mills as employer, but not the defendants. Because, moreover, none of the four had been involved directly in the accident that resulted in Rounds' injuries, the defendants asserted that there was no alternative basis for the negligence claims against them. The trial court granted the defendants' motions to dismiss, ruling as to Rounds' claims that the duty to maintain a safe workplace is the nondelegable duty of the employer and that, because none of the defendants was Rounds' employer, they owed him no such duty.

On appeal, Rounds asserts error in the trial court's dismissal of his claims, arguing that an employee has a duty of reasonable care toward fellow employees and, depending upon the circumstances of employment, may therefore have a duty apart from the employer's to provide and maintain a safe workplace. Before we consider the merits of Rounds' contention, we address two preliminary matters. We note, first, that the focal issue before either a trial court considering a motion to dismiss, or this court upon review of an order granting such a motion, is "'whether the allegations [in the plaintiff's pleadings] are reasonably susceptible of a construction that would permit recovery.'" *Collectramatic, Inc. v. Kentucky Fried Chicken Corp.*, 127 N.H. 318, 320, 499 A.2d 999, 1000 (1985) (quoting *Royer Foundry & Mach. Co. v. N.H. Grey Iron, Inc.*, 118 N.H. 649, 651, 392 A.2d 145, 146 (1978)). That determination requires the court to assume the truth of the plaintiff's allegations of fact and to construe all reasonable inferences therefrom most favorably to the plaintiff. *Id.*

As a second preliminary matter, we wish to dispense with any question that may have arisen as to the import in this case of our decision in *Young v. Prevue Products, Inc.*, 130 N.H. 84, 534 A.2d 714 (1987), which was issued a few months after the plaintiff filed this appeal. In *Young*, we upheld the constitutionality of the second part of RSA 281:12, II, which bars consortium actions by an employee's spouse against the employer. *Id.* at 88, 534 A.2d at 717. In so doing, we declined to apply the *quid pro quo* analysis on which a majority of the court had relied in *Estabrook v. American Hoist & Derrick, Inc.*, 127 N.H. at 172–73, 498 A.2d at 747; *Young*, 130 N.H. at 88, 534 A.2d at 717. In *Estabrook*, the court invalidated the first part of RSA 281:12, II, an amendment which prohibits

actions against co-employees for non-intentional torts, by finding that due process under part I, article 14 of the New Hampshire Constitution required a *quid pro quo* or an adequate substitute for the common law right to sue a co-employee. *Estabrook, supra* at 172–73, 498 A.2d at 751. To determine the existence of an adequate *quid pro quo*, the majority constructed an analysis which asked whether the rights extinguished by the statutory amendment had a substantial or fundamental relationship to rights affected by the original act. If they did, the question became whether the workers' compensation law as a whole provided an adequate substitute remedy; if no such relationship existed, however, the question was whether an adequate *quid pro quo* was provided at the time the rights were abolished. *Id.* The practical effect of the *Estabrook* analysis was to require that every amendment barring a common law or statutory right include a contemporaneously provided substitute remedy, which we later decided in *Young* "could result in unfairness and lead to anomalous results where the purpose of the deprivation is to restore the balance of the general *quid pro quo*." *Young, supra* at 88, 534 A.2d at 717; *see also Thone v. Liberty Mutual Insurance Co.*, 130 N.H. 702, 549 A.2d 778 (1988). Therefore, in *Young* we overruled the *Estabrook* holding to the extent that it might be interpreted as requiring a contemporaneously enacted *quid pro quo* provision whenever an amendment to the workers' compensation law would curtail previously existing rights of action, observing that workers' compensation laws generally withstand due process challenges because they "'provide a *quid pro quo* for potential tort victims whose . . . rights of action are supplemented by the statute.'" *Young, supra* at 87–88, 534 A.2d at 717 (quoting *Park v. Rockwell International Corp.*, 121 N.H. 894, 898, 436 A.2d 1136, 1138 (1981)).

Defendant White has contended, both in his brief and during oral argument, that the effect of *Young*, in overruling the *Estabrook quid pro quo* analysis, was to revive the statutory prohibition against co-employee actions for non-intentional torts. Although *Young* overruled the *Estabrook quid pro quo* analysis, it did not overrule the entire decision. Defendant White is erroneous in his assertion that, by abandoning the *Estabrook* analysis, we in effect held the first part of RSA 281:12, II constitutional. We give no opinion as to whether that provision, or a reenactment thereof by the legislature, would be unconstitutional if we were to consider it under the *Young* analysis. We therefore turn to the substance of Rounds' assertion: namely, that each of the defendants incurred

liability for Rounds' injuries by breaching a duty to provide a safe workplace.

■ An employee who receives benefits under the workers' compensation law for work-related injuries may also bring an action against a fellow employee for the same injuries, where the co-employee has incurred "a legal liability to pay damages in respect thereto." RSA 281:14, I. Because the statutory prohibition against co-employee actions for non-intentional torts has been held to be invalid, *see* RSA 281:12, II; *Estabrook*, 127 N.H. at 178, 498 A.2d at 751, an injured employee may sue co-employees for injuries resulting from negligence, as well as those resulting from intentional torts.

■■ It is black-letter law, however, that there can be no liability for negligence unless there exists a duty, whose breach by the defendant causes the injury for which the plaintiff seeks to recover. *See* W. PROSSER & W. KEETON, THE LAW OF TORTS § 30, at 164–65 (5th ed. 1984). The maintenance of a safe workplace, including suitable machinery and tools, is the duty of the employer. *Moore v. Company*, 89 N.H. 332, 335, 197 A. 707, 710 (1938); *Wallace v. Railroad*, 72 N.H. 504, 513, 57 A. 913, 918 (1904); *Jacques v. Company*, 66 N.H. 482, 484, 22 A. 552, 553 (1891). Moreover, the employer's duty is nondelegable in that the employer cannot escape liability for breach either by purporting to delegate to another the duty itself, *see Moore, supra* at 336, 197 A. at 710; *Maltais v. Concord*, 86 N.H. 211, 215–16, 166 A. 267, 269 (1933); *Racette v. Company*, 85 N.H. 171, 172, 155 A. 254, 255 (1931); *Bilodeau v. Gale Brothers*, 83 N.H. 196, 198, 140 A. 172, 173 (1928); *Wallace, supra* at 514–15, 57 A. at 918–19, or by delegating merely the performance of the duty, *see Moore supra*; *Wallace, supra* at 514, 57 A. at 918 (corporate employer is liable for negligence of employee charged with performance of the employer's duty); *Jacques supra* (corporate employer is liable for breach of safe workplace duty, notwithstanding the delegation of performance to another).

While these cases clearly stand for the proposition that an employer may not shed its own liability, we find no New Hampshire case directly addressing the issue of whether an employee may also assume the duty to ensure a safe workplace. In *Stevens v. Lewis*, 118 N.H. 367, 387 A.2d 637 (1978), the court recognized that when a person who is an alter ego of a corporation performs a corporate responsibility, that person is immune from liability under RSA 281:12 for failure to provide a safe workplace. However, *Stevens* did

not precisely address the question of what duty an employee, who is not a corporate alter ego, owes to a co-employee. The court reasoned in *Stevens* that under the workers' compensation law, an employee who in reality is the employer should not be held liable where he is performing a corporate duty. *Id.* at 370, 387 A.2d at 639. We conclude that the purpose of the workers' compensation law similarly demands that an employee, who is charged with carrying out the employer's responsibility to provide a safe workplace, should not be subject to liability.

■ Therefore, we now hold that the duty to maintain a safe workplace rests exclusively with the employer, not the employee. To hold otherwise would vitiate the purpose of the workers' compensation law. In executing its duties an employer must always find employees to carry them out. *Jacques v. Company*, 66 N.H. 482, 484, 22 A. 552, 553. To charge the employee with the same duty as the employer would effectively sidestep the workers' compensation law and hold the employee liable for breach of the same duty already compensated for through the payment of benefits. Furthermore, we are mindful of the additional public policy concern in exposing officers and employees to personal liability with every injury caused by an unsafe workplace. We find support for our decision from a majority of jurisdictions which have addressed this issue. *See, e.g., Greco v. Farago*, 477 A.2d 98, 100 (R.I. 1984); *Kruse v. Schieve*, 61 Wis. 2d 421, 213 N.W.2d 64 (1973); *Stanislaus v. Parmalee Indus., Inc.*, 729 S.W.2d 543 (Mo. App. 1987). An employee will be liable in negligence for the injuries of a fellow employee only upon breach of a duty distinct from the employer's duty to maintain a safe workplace.

■■ Our review of the trial court's dismissal requires that we construe the pleadings in the light most favorable to the plaintiff. *See Collectramatic, Inc. v. Kentucky Fried Chicken Corp.*, 127 N.H. at 320, 499 A.2d at 1000. Nonetheless, even if we assume that Rounds has alleged the existence of two distinct duties, in asserting in the writ that the defendants had "a duty to provide plaintiff Rounds with a safe workplace and to exercise reasonable care to prevent injury," it is evident from the ensuing description of the defendants' purported breach that Rounds is alleging only a breach of the duty to maintain a safe workplace. The provision and maintenance of safe equipment, posting of warnings, training and supervision of employees, appointment of a safety committee or inspector, and compliance with industry safety standards are components of the duty to provide a safe workplace, which, in turn,

is the employer's obligation alone, even where the employer is a corporation and employees, such as the defendants, actually discharge the duty. *See Moore*, 89 N.H. at 335–36, 197 A. at 710; *Wallace*, 72 N.H. at 513–15, 57 A. at 918–19; *Jacques*, 66 N.H. at 484, 22 A. at 553. The authority on which Rounds relies in arguing to the contrary is peripherally, if at all, relevant to the issue of who, as between employer and employee, is obligated to provide a safe workplace, and the decisions therefore are not controlling here.

In the absence of allegations in the pleadings "'reasonably susceptible of a construction that would permit [Rounds'] recovery,'" *Collectramatic, Inc. supra*, we thus conclude that the trial court's dismissal of the plaintiff's claims was proper.

We note, finally, that Rounds also has presented as an issue in this appeal the validity of his wife's consortium claims. The consortium claims were not subject to dismissal, however, and the issue of their validity therefore is not ripe for our consideration here.

*Affirmed.*

All concurred.