Grafton
No. 89-274

CURTIS TYLER & a.

v.

CLINTON B. FULLER & a.

February 7, 1990

*Wiggin & Nourie,* of Manchester (*W. Wright Danenbarger* and *Mary Anne Mueller* on the brief, and *Ms. Mueller* orally), for the plaintiffs.

*Boynton, Waldron, Doleac, Woodman & Scott P.A.,* of Portsmouth (*Ralph R. Woodman, Jr.,* and *Bradley M. Lown* on the brief, and *Mr. Lown* orally), for the defendants.

JOHNSON, J. This is an interlocutory appeal from a ruling of the Superior Court (*Barry,* J.) denying the defendants' motion to dismiss. The issue presented is whether the plaintiffs' writ sets forth an actionable claim of negligence against the defendants as co-employees of plaintiff Curtis Tyler such that the plaintiffs are not barred from recovery by the exclusive remedy provision of the New Hampshire Workers' Compensation Law, RSA 281-A:8, I(a) (Supp. 1989). We find that the allegations in the plaintiffs' writ are insufficient to state a cause of action, and accordingly we reverse.

On June 5, 1984, Curtis Tyler was injured while milling oak molding on a table saw at the Trumbull Nelson Company in Hanover. He received workers' compensation benefits as a result of his injury. On January 16, 1987, Tyler and his wife Karen Tyler commenced this lawsuit against Clinton B. Fuller, George M. Bonvallat, Lawrence Ufford, and Robert Quackenbush, who were, at the time of the accident, the president and treasurer, executive vice-president, vice-president, and carpenter shop foreman and safety officer, respectively. The plaintiffs' writ alleged "that the defendants, as supervisors and/or co-employees of the plaintiff Curtis Tyler had a duty to provide the plaintiff with a safe work place; that defendants negligently and carelessly supplied plaintiff with milling equipment which was hazardous and dangerous," and that the defendants' negligence caused the plaintiff's injury.

Approximately two years later, on November 4, 1988, we issued our decision in *Rounds v. Standex International,* 131 N.H. 71, 550 A.2d 98 (1988), in which we held that an employee may not sue a co-employee for injuries resulting from negligence where the co-employee is carrying out the employer's nondelegable duty to maintain a safe workplace. *Id.* at 77, 550 A.2d at 102. We stated that to find "otherwise would vitiate the purpose of the workers' compensation law ... [by] hold[ing] the employee liable for breach

of the same duty already compensated for through the payment of benefits." *Id.*; *see* RSA ch. 281-A (Supp. 1989).

Several days after we issued our decision in *Rounds*, the defendants in the present case filed a motion to dismiss, arguing that *Rounds* was dispositive of the matter. The trial court disagreed, based on the wording in the plaintiffs' amended writ which was filed on January 5, 1989. In their amended writ, the plaintiffs named Harris Lyman, a safety officer, as the fifth defendant, and they restated their allegations in the following manner:

> "that the defendants had a duty to exercise reasonable and ordinary care in their dealings with fellow employees and to avoid affirmatively causing or increasing the risk of injury to a co-employee beyond the scope of their duty to provide a safe workplace; that, nevertheless, in total disregard of the aforesaid duties, the defendants negligently and carelessly affirmatively approved the modification of a table saw without a device designed to prevent the kickback of wood and affirmatively approved the modification of a table saw without a cover guard and performed other negligent acts ..."

In considering the facts as alleged in the light most favorable to the plaintiffs, *Collectramatic, Inc. v. Kentucky Fried Chicken Corp.*, 127 N.H. 318, 320, 499 A.2d 999, 1000 (1985), the trial court found that the defendants were co-employees of the plaintiff, Curtis Tyler, in addition to being owners, supervisors or executives. It further found that, as co-employees, the defendants owed a duty to the plaintiff to ensure that any modification of the milling machine which the plaintiff operated was done in a prudent, safe and reasonable fashion. Finally, the trial court found that the defendants' breach of this duty caused the plaintiff's injury. In order to avoid applying the holding in *Rounds* to the plaintiffs' case, the trial court stated "that the duty owed by the defendant[s] to [Curtis Tyler was] totally separate, distinct and outside of that enunciated by the New Hampshire Supreme Court in *Rounds* .... In simple terms ... it is concluded that [the] plaintiff has set forth a cognizable claim of misfeasance over and above the nondelegable duties discussed in *Rounds*."

Following its decision, the trial court approved the defendants' application for interlocutory appeal. The question presented is whether the defendants breached a duty separate and apart from the employer's duty to maintain a safe workplace. The trial court also allowed the plaintiffs' motion to amend the defendants'

interlocutory appeal to include the additional question whether the holding in *Rounds* applies retroactively. This second issue was stayed pending our decision in *Hall v. Tibert*, 132 N.H. 620, 567 A.2d 593 (1989). In *Hall* we addressed this precise question and held that the decision in *Rounds* does apply retroactively. Therefore, this second question is answered in the affirmative, and we now turn our attention to the main issue.

Our analysis necessarily begins with a discussion of the *Rounds* case. In *Rounds*, the plaintiff was injured while operating a textile-rolling machine at Troy Mills. *Rounds*, 131 N.H. at 73, 550 A.2d at 99. He sued the Troy Mills president, the director of personnel responsible for safety, the foreman in charge of the plaintiff's shift, and the plant engineer. As to each defendant the plaintiff claimed that he

"had 'a duty to provide plaintiff Rounds with a safe workplace and to exercise reasonable care to prevent injury'; ... that each breached that duty in requiring Rounds to work on a machine that was unreasonably dangerous because its safety devices had been disabled, in failing to display warnings of the machine's hazards, in failing to train and supervise Rounds properly, in failing to appoint a committee or inspector to oversee plant safety, and in failing to enforce industry safety standards; and ... that the breach caused Rounds' injuries."

*Id.*

In upholding the trial court's order granting the defendants' motion to dismiss, this court explained that it is the nondelegable duty of the employer to provide a safe workplace. *Id.* at 76, 550 A.2d at 101. We then concluded that an employee could not also assume the duty to ensure a safe workplace, since it is the sole responsibility of the employer. Instead, an employee charged with the responsibility of making the workplace safe is merely executing the employer's duty. Therefore, the employer's immunity from suit under the workers' compensation law similarly protects an employee who is negligent while carrying out the employer's duty to provide a safe workplace.

In reaching this conclusion we explained that "[i]n executing its duties an employer must always find employees to carry them out," and that "[t]o charge the employee with the same duty as the employer would effectively sidestep the workers' compensation law and hold the employee liable for breach of the same duty already compensated for through the payment of benefits." *Id.* at 77, 550

A.2d at 102. We further noted that we were "mindful of the additional public policy concern in exposing officers and employees to personal liability with every injury caused by an unsafe workplace." *Id.* In support of our conclusion, we cited three cases from foreign jurisdictions: *Greco v. Farago,* 477 A.2d 98 (R.I. 1984); *Kruse v. Schieve,* 61 Wis. 2d 421, 213 N.W.2d 64 (1973); *Stanislaus v. Parmalee Indus., Inc.,* 729 S.W.2d 543 (Mo. App. 1987). Finally, we concluded by stating that "[a]n employee will be liable in negligence for the injuries of a fellow employee only upon breach of a duty distinct from the employer's duty to maintain a safe workplace." *Rounds,* 131 N.H. at 77, 550 A.2d at 102. It is this language and language from the cases cited in *Rounds* upon which the plaintiffs rely to support their argument that the holding in *Rounds* does not bar their cause of action.

■ The crux of the plaintiffs' argument is that by alleging *active* negligence or misfeasance they have distinguished *Rounds.* They argue that the plaintiff in *Rounds* did not claim that his injuries resulted from his fellow employees' direct involvement in disabling certain safety devices on the rolling machine. Therefore, by doing what the plaintiff in *Rounds* failed to do, that is, by alleging direct, affirmative misfeasance instead of passive nonfeasance, the plaintiffs assert that they have alleged a "breach of a duty distinct from the employer's duty to maintain a safe workplace." *See id.* at 77, 550 A.2d at 102.

An alternative or additional theory presented by the plaintiffs in this action is that the defendants may be held liable because their involvement in affirmatively approving the modifications of the table saw without an anti-kickback device or a cover guard was independent and outside of their employer's duty to provide a safe workplace, as well as independent of their own duties owed to their employer. The modifications to the machine included changing the switching mechanism, and the installation of a motor drive and belt system which increased the power and speed of the machine.

■ We hold that *Rounds* applies to the plaintiffs' case and that the plaintiffs' action is therefore barred by the exclusive remedy provision of the workers' compensation law. *See* RSA 281-A:8, I(a) (Supp. 1989). This conclusion is supported both by the facts and by the legal theories found in *Rounds,* including the cases cited from other jurisdictions.

To begin with, we disagree with the plaintiffs' assertion that Mr. Rounds did not allege any affirmative negligence because he failed to state that the defendants were directly involved in disabling the

safety devices on the rolling machine. On the contrary, Rounds alleged that the defendants breached a duty of reasonable care by "*requiring* Rounds to work on a machine that was unreasonably dangerous." *Id.* at 73, 550 A.2d at 99 (emphasis added). "Requiring" an employee to work on a particular machine is clearly an affirmative act. It is not a *failure* to act with due care, and hence nonfeasance or passive negligence.

Furthermore, the distinction between active and passive negligence or misfeasance and nonfeasance is unworkable. It is a basic tenet in negligence law that one can be liable for a negligent act *or omission*. Therefore, we disagree with the plaintiffs' position that a cause of action will survive if active negligence is alleged, but it will be dismissed if the writ only alleges passive negligence.

Despite our criticism of the misfeasance-nonfeasance distinction, we recognize that the plaintiffs properly pointed out at oral argument that one of the cases cited in *Rounds* used the misfeasance-nonfeasance concept in analyzing co-employee negligence cases. *See Stanislaus v. Parmalee Indus., Inc.*, 729 S.W.2d at 545. In *Stanislaus* the Missouri Court of Appeals stated that it was following *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175 (Mo. App. 1982), when it concluded that the misfeasance-nonfeasance distinction should be used in workers' compensation cases. *Stanislaus*, 729 S.W.2d at 544–45. In *Badami* the court traced the history of the development of the misfeasance-nonfeasance concept in tort law and agency law, and determined that it existed at the time the workers' compensation law was enacted. *Badami*, 630 S.W.2d at 177–79. In addition, the court found the word "misfeasance" in a 1931 Missouri case concerning the liability of a co-employee as a "third person" under the workers' compensation law. For these reasons, that court did not reject the use of the misfeasance-nonfeasance distinction in workers' compensation cases, even though it acknowledged that the distinction was perhaps "effectively eliminated by [the Missouri] courts as a viable concept in agency and tort law" because it arguably "permitted the primary wrongdoer to escape liability merely because his negligence was passive." *Id.* at 178.

Despite this adoption of the misfeasance-nonfeasance concept by the Missouri courts, its application is confusing. Although the courts use the terms in *Badami* and *Stanislaus*, the real emphasis seems to be on whether the negligence occurred in the defendant's role as a supervisor or as a co-employee. In *Stanislaus* the court used the nonfeasance term to explain that the defendant supervisory co-employee was not liable for the non-performance of duties

assigned to him by his employer because he owed a duty to the employer, not to the co-employee, to perform the assigned tasks properly. Since the defendant was standing in the employer's shoes at the time he failed to perform, the defendant enjoyed the employer's immunity from suit under the workers' compensation law. *Stanislaus,* 729 S.W.2d at 546–47.

The result was similar in the recent case of *J. M. F. v. Emerson,* 768 S.W.2d 579 (Mo. App. 1989). In *J. M. F.,* the Missouri Court of Appeals affirmed the trial court's order dismissing the plaintiff's negligence action. In her complaint, the plaintiff stated that one of the defendants, a doctor, "negligently directed [the plaintiff] to draw blood from an AIDS patient" with an unsafe instrument with which the plaintiff subsequently cut her finger. *Id.* at 580. On appeal the plaintiff argued that the doctor "was a supervisory employee who committed misfeasance." *Id.* at 581. Despite this allegation of active negligence, however, the appellate court affirmed the dismissal of the plaintiff's case because "each of these acts was within Dr. Emerson's non-delegable duty of safe and proper supervision which was owed to his employer...." *Id.* The doctor did not step out of his supervisory role into the role of a co-employee and therefore was not liable as a co-employee. *See id.* at 581–82.

These cases illustrate that even the Missouri courts do not adhere to the narrow application of the misfeasance-nonfeasance distinction urged by the present plaintiff. Merely alleging active negligence or misfeasance is not enough to state a viable cause of action against a co-employee.

The second part of the plaintiffs' argument is the heart of the issue. That is, whether the defendants' acts were independent and outside of their employer's duty to provide a safe workplace and separate from their own duties owed to their employer.

The language in the frequently quoted case of *Kruse v. Schieve,* 61 Wis. 2d 421, 213 N.W.2d 64 (1973), which we cited in *Rounds,* is helpful in resolving this issue. The Missouri courts relied on the reasoning in Kruse and its progeny, in *Badami* and *Stanislaus,* as did the Supreme Court of Rhode Island in *Greco v. Farago,* 477 A.2d 98, the third and final case cited in support of the holding in *Rounds.* Before beginning our discussion of *Kruse,* it is important to note that the Wisconsin Legislature barred common law actions against co-employees in 1977. *Henning v. General Motors Assembly Div.,* 143 Wis. 2d 1, 13, 419 N.W.2d 551, 555 n.3 (1988). Nevertheless, the analysis in *Kruse* remains apposite.

In *Kruse* the plaintiff alleged that the defendant, a corporate officer, was liable for negligence as a co-employee. *Kruse*, 61 Wis. 2d at 423, 213 N.W.2d at 65. The plaintiff was injured when her hand was caught in the rollers of a textile carding machine. She received workers' compensation benefits and then brought a third-party action against her supervisor alleging that his negligence caused her injury. *Id.* at 423–24 213 N.W.2d at 65. The court dismissed the plaintiff's action with leave to replead because she did not clearly state in her complaint that the defendant was acting outside the role of supervisor and in the capacity of a co-employee at the time the plaintiff was injured.

Before reaching its conclusion, the court explained that a third-party action against a corporate officer would survive "when such officer has doffed the cap of corporate officer, and donned the cap of a coemployee." *Id.* at 425, 213 N.W.2d at 66. A corporate officer's "liability must rest upon common-law failure to exercise ordinary care toward an employee to whom, *under the circumstances*, they owed a duty." *Id.* at 428, 213 N.W.2d at 67 (citation omitted) (emphasis added).

The court further explained that "[t]he duty of proper supervision is a duty owed by a corporate officer or supervisory employee to the employer, not to a fellow employee. Under what circumstances can a duty be owed to a fellow employee additional to and different from the duty of proper supervision that is owed to the employer by a corporate officer or supervisory employee? Clearly *something extra* is needed over and beyond the duty owed the employer." *Id.* (emphasis added). It must be "an affirmative act which increase[s] the risk of injury" and is beyond the scope of the employer's nondelegable duty to provide a safe workplace. *Id.*, 213 N.W.2d at 68. Given our discussion concerning active and passive negligence, we find it necessary to note that the court's use of "affirmative act" in *Kruse* includes both acts of commission and omission. *See Kruse v. Schieve*, 72 Wis. 2d 126, 131, 240 N.W.2d 159, 162 (1976) (appeal after remand).

In the present case we must consider the facts as alleged in the light most favorable to the plaintiffs. *Collectramatic*, 127 N.H. at 320, 499 A.2d at 1000. In doing so we assume that the defendants negligently "approved the modification of a table saw without a device designed to prevent the kickback of wood and ... without a cover guard." The plaintiffs then allege that this negligence breached "a duty to exercise reasonable and ordinary care in [the defendants'] dealings with fellow employees and to avoid affirma-

tively causing or increasing the risk of injury to a co-employee beyond the scope of their duty to provide a safe workplace."

These allegations are insufficient to sustain the plaintiffs' cause of action. Although the plaintiffs state that the defendants had a duty of reasonable care in their dealings with fellow employees, it is not alleged that the defendants were acting in the separate and distinct capacity as co-employees when they were negligent. There must be "something extra" alleged which removes the act from the category of supervisory duties which the defendant performs for the employer. *See Kruse*, 61 Wis. 2d at 428, 213 N.W.2d at 67. If such duties are performed negligently, the supervisory employee has breached a duty owed to the employer and not to the employee. On the other hand, if a supervisory employee steps out of his or her role as a supervisor and into the role of a co-worker/co-employee, a breach of duty for co-employee negligence may be alleged under a set of facts which provide "something extra." Examples of this would be where a corporate officer negligently operated a boom truck which caused the employee's death, *Wasley v. Kosmatka*, 50 Wis. 2d 738, 184 N.W.2d 821 (1971), or where the plaintiff was seriously burned in a flash fire caused by the corporate president's negligence in assisting the plaintiff fix a broken machine, *Craft v. Scaman*, 715 S.W.2d 531 (Mo. App. 1986). An important factor to consider is the nature of the alleged negligence. If there is some direct involvement which creates a personal duty of care, liability may be asserted notwithstanding *Rounds* if such an independent duty is breached by a supervisory employee acting in the capacity of a co-worker/co-employee.

In essence, the plaintiffs' writ in the present case alleges that the defendants, all of whom were supervisors and/or corporate officers at the time of the accident, failed to provide safe equipment. Since providing safe equipment is one component of providing a safe workplace, the plaintiffs' cause of action is barred by the holding in *Rounds*.

*Reversed.*

All concurred.