Belknap
No. 90-320

CHRISTINE M. AND PETER F. THOMPSON

v.

DIANE FOREST & a.

October 14, 1992

*Law Offices of David J. KillKelley, P.C.*, of Laconia (*David J. KillKelley* on the brief and orally), for the plaintiffs.

*Yakovakis, McDonough & Lindh*, of Manchester (*James G. Walker* on the brief and orally), for defendants Diane Forest, Marcia Hansen, Sandra Bergeron, and Hans Rudolph Wirth.

HORTON, J. This case comes to us on an interlocutory appeal, pursuant to Supreme Court Rule 8, of the Superior Court's (*McHugh*, J.) denial of the defendants' motion to dismiss those portions of the plaintiffs' tort action that alleged "willful, wanton and reckless" conduct on the part of the defendant co-employees. For the reasons that follow, we reverse and dismiss the surviving counts.

On August 26, 1986, a patient was admitted to the Franklin Regional Hospital following a diagnosis of acute and chronic alcoholism. During the course of his hospitalization, the patient became agitated and delusional. Plaintiff Christine Thompson, a practical nurse assigned to care for the patient, injured her knee while attempting to restrain him.

Plaintiff Christine Thompson brought suit against her co-employees Diane Forest, the charge nurse; Marcia Hansen, the shift supervisor; Sandra Bergeron, the director of nursing services; and Hans Rudolph Wirth, the hospital administrator, maintaining that the defendants were negligent in their duty to provide a safe workplace. Her husband, plaintiff Peter Thompson, joined in the suit, alleging loss of consortium. The defendants filed a motion to dismiss, arguing that our holding in *Rounds v. Standex International*, 131 N.H. 71, 550 A.2d 98 (1988), barred actions against co-employees for breach of the nondelegable duty to provide a safe workplace. The plaintiffs filed voluntary non-suits, but subsequently reinstituted their actions, adding claims that the defendants' conduct was "willful, wanton and reckless." The defendants filed a renewed motion to dismiss, which the trial court granted on the claims of negligence but denied on the counts that alleged "willful, wanton and reckless" conduct. This interlocutory appeal followed.

■■ The standard of review in considering a motion to dismiss is "whether the allegations [in the plaintiffs' pleadings] are reasonably susceptible of a construction that would permit recovery." *Collectramatic, Inc. v. Kentucky Fried Chicken Corp.*, 127 N.H. 318, 320, 499 A.2d 999, 1000 (1985) (quotation omitted). We assume the truth of the plaintiffs' pleadings and construe all reasonable inferences therefrom in a light most favorable to the plaintiffs. *Id.* "[W]e need not accept statements in the complaint which are merely conclusions of law." *Mt. Springs Water Co. v. Mt. Lakes Vill. Dist.*, 126 N.H. 199, 201, 489 A.2d 647, 649 (1985).

The defendants argue that all counts in the writ should be dismissed. They assert that the provision for proper security in the workplace is a nondelegable duty of the employer and that *Rounds*

precludes suits against co-employees, even when the conduct alleged is willful, wanton and reckless. They would leave the plaintiff with the rights afforded by our Workers' Compensation Law. We revisit that law and the status of co-employee liability.

"In 1911, New Hampshire became one of the first states to enact a valid workers' compensation law." *Estabrook v. American Hoist & Derrick, Inc.*, 127 N.H. 162, 168, 498 A.2d 741, 744 (1985). "In recognition of the burdens, delays, inadequate relief and unequal operation of law inherent in common law remedies, the Workers' Compensation Law was 'designed to substitute for unsatisfactory common law remedies in tort a liability without fault with limited compensation capable of ready and early determination.'" *Id.* at 168–69, 498 A.2d at 744 (quoting *Bilodeau v. Oliver Stores, Inc.*, 116 N.H. 83, 86, 352 A.2d 741, 743 (1976)).

The legislature amended the law in 1947, mandating that employees elect between workers' compensation coverage and the common law right to sue their employer for injuries sustained in the course of employment. Laws 1947, 266:10; *see Park v. Rockwell Int'l Corp.*, 121 N.H. 894, 896, 436 A.2d 1136, 1137 (1981). In 1959, the legislature further amended the workers' compensation statute, creating a conclusive presumption that all employees have chosen to be covered by workers' compensation. Laws 1959, 187:4; *see Park v. Rockwell Int'l Corp.*, 121 N.H. at 896, 436 A.2d at 1137.

While suit against the employer was precluded, "New Hampshire law permitted an injured employee who had received workers' compensation benefits to bring an action against a fellow employee tortfeasor" responsible for the injury. *Young v. Prevue Products, Inc.*, 130 N.H. 84, 86–87, 534 A.2d 714, 716 (1987). However, in 1978, the legislature again amended the Workers' Compensation Law, enacting a statutory bar to negligence actions against co-employees. Laws 1978, 46:1; *Young v. Prevue Products, Inc.*, 130 N.H. at 87, 534 A.2d at 716.

The constitutionality of the amended statute was addressed in *Estabrook v. American Hoist & Derrick, Inc.*, 127 N.H. 162, 492 A.2d 741, in which a majority of this court held that the tort immunity provided to co-employees for non-intentional acts was unconstitutional. We limited *Estabrook* in *Rounds v. Standex International*, 131 N.H. 71, 550 A.2d 98, by holding that an employee may not sue a co-employee for injuries resulting from negligence where the co-employee is carrying out the employer's nondelegable duty to provide a safe place to work. *Id.* at 77, 550 A.2d at 102. Most recently, in *Tyler v. Fuller*, 132 N.H. 690, 569 A.2d 764 (1990), we attempted to clarify

when an act of an employee falls outside of the employer's duty to provide a safe workplace. We stated that the plaintiff must allege "something extra" that removes the act from the category of supervisory duties that the defendant performs for the employer. *Id*. at 698, 569 A.2d at 769.

Even though the co-employee immunity statute was declared unconstitutional in *Estabrook*, it was not repealed by the legislature. To the contrary, when New Hampshire's Workers' Compensation Law was recodified, Laws 1988, 194:2, the legislature retained the co-employee immunity provision, *see* RSA 281-A:8, I(b) (Supp. 1991). That statute effectively bars all rights of action by an employee, "[e]xcept for intentional torts, against any officer, director, agent, servant or employee acting on behalf of the employer or the employer's insurance carrier." *Id*. A year later, the legislature removed any doubt of its intention to confer co-employee immunity for non-intentional torts, stating: "The general court hereby reaffirms and declares to be valid law RSA 281-A:8, I(b)." Laws 1989, 294:1. The legislature explained that co-employee immunity was "necessary to maintain the integrity of the tort immunity conferred on the employer . . . which is the fundamental quid pro quo for providing no-fault workers' compensation benefits." *Id*. The legislature expressed its intent to confer "full tort immunity" on fellow employees "for non-intentional acts performed on behalf of employers." *Id*.

We have previously had occasion to examine the soundness of our logic in *Estabrook*. In *Young v. Prevue Products, Inc.*, this court held that a statutory bar to actions by an employee's spouse for loss of consortium was constitutional. 130 N.H. at 84, 534 A.2d at 715. In so holding, the unanimous court stated:

> "To the extent that the holding in *Estabrook* may be interpreted as requiring that a restrictive amendment to the workers' compensation law must be supported by a *contemporaneously* enacted provision for a new benefit, it is overruled. To require that the legislature always increase benefits to a particular group of individuals whenever it takes other benefits away could result in unfairness and lead to anomalous results where the purpose of the deprivation is to restore the balance of the general *quid pro quo*."

*Id*. at 88, 534 A.2d at 717 (emphasis added). Thus, the holding in *Young* requires us to consider the totality of benefits, not just those benefits received at the time the right was statutorily abridged, when evaluating whether the relinquishment of the right to a remedy

has been adequately offset by workers' compensation benefits. Our inquiry is driven by analysis of the fairness of the compensation scheme as a whole.

■ Considering the 1978 amendment examined in *Estabrook*, which enacted the statutory bar to negligence actions against co-employees, in the context of the entire Workers' Compensation Law, we are of the opinion that the combined benefits of the statute as a whole provide adequate compensation for the restrictions imposed by the amendment. We agree with the conclusion of the legislature that the restriction is appropriate to maintain the integrity of the fundamental *quid pro quo*: tort immunity conferred on the employer. Accordingly, we hold that RSA 281-A:8, I(b) (Supp. 1991) is constitutional. This court's prior holding in *Estabrook* is overruled.

The statute now controls and expressly provides employees immunity from non-intentional tort claims brought by co-employees. The attempts in *Rounds* and *Tyler* to define the limits of full co-employee liability are no longer necessary, because those two cases were decided when *Estabrook* controlled. Having overruled *Estabrook*, we must determine whether the conduct alleged in the surviving counts of the plaintiffs' writ, characterized by the plaintiffs as "willful, wanton and reckless," constitutes an intentional tort, thus allowing suit against a co-employee under the Workers' Compensation Law.

■■ The legislature did not provide us with a definition of an intentional tort. Clearly "intentional tort" would include those causes of action that were traditionally so characterized: assault, battery, false imprisonment, infliction of mental distress, trespass to land, trespass to chattels, and conversion. *See* W. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS §§ 9–15 (5th ed. 1984) (hereinafter "PROSSER AND KEETON"). This covers those causes that are properly pled under trespass and trover and excludes those causes properly pled as trespass on the case. But the law has refused to leave the definition that simple. "Intentional torts" have moved beyond the classic forms and require examination into the state of mind of the tortfeasor. "The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids." *Id.* § 8, at 36. Such intent is not limited to consequences that are desired. *Vittum v. N.H. Ins. Co.*, 117 N.H. 1, 4, 369 A.2d 184, 186 (1977). If an actor knows that an injury is substantially certain to result from his act and he nevertheless completes the act, he is treated by the law as if he in

fact desired to produce the injury. *Id.* To constitute an intentional tort, the tortfeasor must have known that his conduct was *substantially certain* to result in injury. RESTATEMENT (SECOND) OF TORTS § 870, at 280 (1979).

> "[T]he mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but *it is not an intentional wrong.* In such cases the distinction between intent and negligence obviously is a matter of degree. The line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the actor a substantial certainty."

PROSSER AND KEETON, *supra* § 8, at 36.

Thus, when we examine the plaintiffs' surviving counts, we are not aided by their characterization of the defendants' conduct as "wanton and reckless." Nor is the intentional status of the alleged tort established by characterization of the defendants' conduct as "willful." The willfulness of the conduct is not the measure. The measure is the certainty of the result. Willful, wanton and reckless conduct may, or may not, be the basis for a properly pleaded intentional tort.

The surviving counts allege facts constituting a substantial risk, both in the general operation of the hospital, and with regard to the specific incident described by the plaintiffs. The plaintiffs allege facts supporting a claim of disregard of the risk and a tortious failure to act to avoid the risk. They do not allege the substantial certainty of the result or facts that would support a finding of substantial certainty. Nor do they allege that any of the defendants were aware of the substantial certainty of the result. The surviving counts sound in negligence and cannot be construed as alleging a cause of action for intentional tort. Although the trial court mistakenly concluded from the "willful, wanton and reckless" language that the alleged torts were intentional torts, it agreed with this court that "the specific allegations against the defendants do not support intentional tort findings but at best support a negligence theory."

No intentional torts were alleged in the surviving counts. RSA 281-A:8, I(b) (Supp. 1991) precludes causes of action against co-employees for the non-intentional torts alleged.

> *Reversed; surviving counts against defendants Forest, Hansen, Bergeron, and Wirth dismissed; remanded.*

All concurred.